DAWKINS, J.
Relator was sentenced to the penitentiary for life in 1914, when the statute of that year (No. 149 of 1914) affecting paroles was in force. He applied to defendant board for a parole under the provisions of that law, and it refused to file and consider his application for the reason that the Acts Nos. 123, 124, and 125 of 1916 (as interpreted by this court in the case of State ex rel. Pailet v. Board of Parole, 151 La. 720, 92 South. 312) exclude a life termer from the benefits of a parole.
Thereupon relator petitioned the court below for a writ of mandamus to compel said board to file and consider his application. That court denied the relief, and he prosecutes this appeal.
Opinion.
Section 2 of Act 149 of 1914 provides:
“That the Governor, or in his absence, the Lieutenant Governor, shall have authority, upon the recommendation of the board of control of the state penitentiary, to issue a parole or permit to go at large to any convict who now is, or hereafter may be, imprisoned in the penitentiary of this state, except as otherwise provided in this act.
“Sec. 3. * * * That no parole shall be granted to any convict until he shall have served at. least one calendar year of the term for which he was sentenced; and that no parole shall be granted to anjj conviot serving a life sentence until he shall have served at least one-third of the actual time he would have *702 served if classed as eligible for reduction of sentence under the laws of this state, and in case of ‘life termers,’ the parole must be approved by the board of pardons.” (Italics by the Court.)
In Pallet's Case, supra, we held that a life termer convicted and sentenced under the Acts of 1916 was excluded from the class eligible to parole, for the reason that the body of Act 125 of that year was broader than the title; the title according the right to a parole to those only who fell within the class serving an indeterminate sentence, while section 6 thereof purported to permit a parole to life termers in practically the same verbiage as section 2 of the Act of 1914 above quoted; but since the last section of Act 125 of 1916 expressly repealed Act 149, and the Acts 123 and 124 of 1916, passed concurrently with No. 125, specifically excluded a “life termer” from the class entitled to the benefits of an “indeterminate sentence,” it was held that Pailet was without right to compel the board to file and consider his application, which it had no power to grant.
Relator finds no fault with the ruling in the Pailet Case, but takes the position that the Acts of 1916, as therein interpreted, cannot control his case, because at the time of their passage he had a vested right to parole eligibility; and to apply them to him would be to give them an ex post facto effect, contrary to constitutional provisions.
On the other hand, the Attorney General, appearing for the board, contends that, since the granting of a. parole was never a matter of right, but rested in the discretion of the board depending upon the conduct of the prisoner, relator has been deprived of no substantial vested right, and hence cannot complain.
The state cites and relies entirely upon Commonwealth v. Kalck, 239 Pa. 533, 87 Atl. 61. In that case, the opinion states that when the crime was committed, the Act of 1909 “fixed the punishment for murder of the. second degree at from 5 to 20 years; that is, under an indeterminate sentence the maximum was 20 years and the minimum not’ more than 5 years. The Act of 1911 changed this provision of the Act of 1909 by giving to the trial court the power to fix the minimum sentence at any number of years within the maximum limit. * * * ” It was contended that because the new statute permitted the court to fix the minimum (at the end of which the prisoner was eligible for consideration for parole) at more than ' five years, it was ex post facto, and deprived the prisoner of a substantial right; that is, to have his case considered at the end of five years for a parole. The trial court had sentenced him under the new statute and fixed the mimimum at fifteen years, which prevented his being considered for parole until the end of that time. Nevertheless, the appellate court upheld the sentence upon the argument: First, that it did not increase the punishment under the statute denouncing the crime (the Acts of 1909 and 1911 [Pa. St. 1920, §§ 5502-5518, 8239 et seq.], being separate and distinct laws from the one denouncing, murder, and dealing with the subject of indeterminate sentence) and which fixed it at not more than twenty years; and, second, that it merely affected the question of prison discipline and reform of the prisoner.
This case appears to be out of harmony with decisions of most of the courts of other jurisdictions upon this and similar questions. It is based upon the enumeration of ex post facto characteristics made in some of the earlier eases of this country, particularly Calder v. Ball, 3 Dall. (U. S.) 386, 1 L. Ed. 648, in which ex post facto laws were grouped as follows:
“(1) Every law that makes an act done before the passing of the law, and 'which was innocent when done, criminal. * * * (2) Every law that aggravates a crime, or makes it greater than it was, when committed. (3) Every law that changes the punishment, and inflicts a greater punishment, than the law *704 annexed to the crime, when committed. .(4) Eyery law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission oí the offense, in order to convict.”
But even that court, itself, has gotten away from this restricted classification, for in the case of Ex parte Medley, 134 U. S, 160, 10 Sup. Ct. 384, 33 L. Ed. 835, after referring to other decisions upon the subject, it said:
“Without making extracts from these decisions, it may be said that any law which was passed after the commission of the offense for which the party is being tried is an ex post facto law when it inflicts a greater punishment than the law annexed to the crime at the time it was committed ; *, * * or which alters the situation of the accused to Ms disadvantage. * * * ” (Our italics.)
In the latter case, the statute of Colorado, after the crime was committed, had changed the provision that one condemned to death should be confined, pending execution, in the county jail, so as to require that he be placed in solitary confinement in the state penitentiary; and it was held that this change could not apply to the prisoner whose offense was committed before its passage, because of the ex post facto effect. Rose’s notes (page 1127) to Ex parte Medley, 134 U. S. 160, 10 Sup. Ct. 384, 33 L. Ed. 835. See, also, Kring v. Missouri, 107 U. S. 22, 2 Sup. Ct. 443, 27 L. Ed. 506; Lindzey v. State, 65 Miss. 542, 5 South. 99, 7 Am. St. Rep. 674; Murphy v. Commonwealth, 172 Mass. 264, 52 N. E. 505, 43 L. R. A. 154, 70 Am. St. Rep. 266; State v. Tyree, 70 Kan. 203, 78 Pac. 525, 3 Ann. Cas. 1020, and note; also, note Rooney v. North Dakota, 196 U. S. 319, 25 Sup. Ct. 264, 47 L. Ed. 494, 3 Ann. Cas. 76.
The board of control of the penitentiary in existence when the Act ,149 of 1914 was passed has been abolished; but its functions with regard to parole are now vested in the board of parole, created by the Act 125 of 1916, which, as heretofore pointed out, is divested of jurisdiction in the case of life terms by the statutes of that year, at least as to offenses committed since their passage.
However, if relator’s contention that their operation in his case would have an ex post facto effect is correct, then we can see no reason why the present board should not consider and determine his application.
There can be no' doubt but that the right to be considered for a parole, after the expiration of one-third of the actual time required to be served, with the benefit of commutation under other laws (in his case something in excess of three years), was a substantial one; for otherwise he would be compelled to continue at.hard labor under the rules of the penitentiary just three times as long as would have been the case, had the board seen fit, after the expiration of the limit fixed by the Act of 1914, to grant him a parole. There can be no comparison between such a condition, and the right to go at liberty and pursue a livelihood under the restrictions of a parole. Of course, the right was not absolute or fixed in the sense that he was bound to be paroled; but the privilege of having his case submitted to the discretion of the board at the proper time did exist; whereas, now, it is entirely taken away, and the board cannot even consider it under the present law.
It would seem clear, therefore, that to give the Laws of 1916 a retrospective effect would operate seriously to his disadvantage, in violation of the inhibition of the Constitution against ex post facto laws.
For the reasons assigned, the judgment, of the lower court is reversed; and it is how ordered and decreed that the board of parole do file and consider the application of relator according to law and the views herein expressed.