## UNITED STATES v. PLATT et al.
### Cr. No. 7724.

District Court, S. D. Texas, Houston Division.
March 6, 1940.

Douglas W. McGregor, U. S. Dist. Atty., and George O'Brien John, Asst. U. S. Dist. Atty., both of Houston, Tex., for the Government.

William Z. Rozan, of Houston, Tex., for defendants.

ALLRED, District Judge.

The named defendant, along with two others, is charged by indictment with violation of the Federal Firearms Act, Title 15, Secs. 901(6) and 902(f), U.S.Code, 15 U.S.C.A. §§ 901(6), 902(f), it being alleged that prior to the commission of the instant offense, the defendants had been convicted of ·crimes of violence (the named defendant having been convicted on July 6, 1933, of the crime of robbery by use of firearms in Jefferson County, Texas); and that on or about November 14, 1939, the defendants "did unlawfully, knowingly and wilfully receive a firearm, to-wit: one Smith & Wesson revolver .38 caliber * * * which firearm had theretofore been shipped and transported by persons to the grand jurors unknown in interstate commerce, *that is to say, the said defendants, at the time and place aforesaid, did have in their possession and under their control the said firearm* described as aforesaid." (Italics supplied.)

The named defendant moves to quash and demurs to the indictment on two grounds: first, that both sections of the Federal Firearms Act, under which the indictment is brought, are in violation of the due process clause of the Constitution of the United States as set out in the Fifth Amendment; second, that the Statute operates as an ex post facto law in so far as the named defendant is concerned.

First: The applicable portion of the Federal Firearms Act reads as follows:

"Sec. [§] 902. * * *

. "(f) It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this chapter."

It will be observed at the outset that the statute making it an offense to receive any firearm which has been shipped, or trans-

ported, in interstate commerce is not applicable to all persons, but only to those of a certain class, to-wit: "any person who has been convicted of a crime of violence or is a fugitive from justice."

■ Defendant makes no attack upon the reasonableness of this classification, or the right of Congress to prohibit the receiving of a firearm which has been shipped or transported in interstate commerce by such person. In any event, it would appear that Congress has the right to regulate interstate commerce in this regard since the act forbids the use of such commerce as an agency to promote the spread of well known evils throughout the nation. Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407, (sustaining the constitutionality of the motor vehicle theft act. Title 18, Sec. 408, U.S.Code, 18 U.S.C.A. § 408).

■ The evils sought to be corrected by Congress through the Federal Firearms Act, 15 U.S.C.A. § 901 et seq., are well known—the practices of roaming racketeers and predatory criminals who know no state lines—a situation beyond the power of control by local authorities to such an extent as to constitute a national menace. Many of these traveling thugs are ex-convicts, men who have been convicted of crimes of violence and presumably would not hesitate to repeat them. After such a convict has completed his term he is no longer subject to parole or supervision. Even in cases of probation or parole, the records are replete with violations of the conditions imposed, in some instances false reports as to whereabouts and activities being made to the supervising officers. It is but natural for such ex-convicts to cross state lines and put as much distance behind them as possible; especially in cases of former inmates of state prisons. Sec.Record of Hearings on H.R. 9066 before The Committee on Ways and Means, House of Representatives, 73rd Congress.

The Act has never been construed. It is the outgrowth of a program suggested to Congress by the Attorney General in 1934, resulting in an act approved on June 26, 1934 (48 Stat. 1236–1240, Incl., Tit. 26, U.S. Code, Sec. 1132 et seq., 26 U.S.C.A. § 1132 et seq.), levying a tax upon certain firearms and regulating interstate traffic therein. This act was held to be constitutional and not an invasion of the reserved powers of the state, or violative of the Second Amendment to the Federal Constitution, guaranteeing the right of the people to keep and bear arms. United States v. Miller et al., 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206.

Defendant's proposition, as briefed and argued before the Court, is as follows: "The Federal Firearms Statute (U.S.C.A., Title 15, Sec. 901(6), Sec. 902(f),) *providing that proof of a prior conviction of a crime of violence, and proof of the defendant's possession of a firearm subsequent to the prior conviction* shall constitute prima facie or presumptive evidence that the firearm was shipped, transported, or received in interstate or foreign commerce, constitutes a denial of due process of law as provided for under the Fifth Amendment to the Constitution of the United States." (Italics supplied.)

Both the defendant and the Government cite the well known line of cases holding that legislation declaring that proof of one fact shall constitute prima facie evidence of the existence of another fact is valid if there is a rational connection between what is proved and what is to be inferred; and that if the presumption is not unreasonable and not made conclusive of the rights of the person against whom raised, it does not constitute a denial of the due process clause; and, conversely, that if the connection is *irrational* or *unreasonable*, such a statute does constitute such a denial. Manley v. Georgia, 279 U.S. 1, 49 S.Ct. 215, 73 L.Ed. 575; McFarland v. American Sugar Refining Company, 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899; Hawes v. Georgia, 258 U.S. 1, 42 S.Ct. 204, 66 L.Ed. 431; Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632; Morrison v. California, 291 U. S. 82, 54 S.Ct. 281, 78 L.Ed. 664; Bailey v. Alabama, 219 U.S. 219, 31 S.Ct. 145, 55 L. Ed. 191; Mobile J. & K. C. R. Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas.1912A, 463, etc.

The question is, therefore, in this case: Is there a rational connection between the fact proved (possession of the firearm) and the ultimate fact presumed (that the firearm was shipped, transported, or received in interstate commerce)? And is the inference of transportation or receipt in interstate commerce from the fact of possession so unreasonable as to be purely an arbitrary mandate? These questions are not easy.

Criminal statutes creating presumptions generally deal with such questions as knowledge and intent; such as guilty knowledge upon a charge of receiving and

concealing stolen property. There are numerous authorities upholding the validity of state statutes creating such presumptions. A statute providing that proof of possession of stolen goods would be prima facie evidence of the theft of such goods would probably be valid; but such a statute would not dispense with the necessity of proving that the particular goods had actually been taken from the possession of the owner without his consent.

Here, however, the presumption is not that the defendant received the firearm with guilty knowledge that it had been unlawfully transported in interstate commerce; but the presumption created is that, since he possessed it, it had theretofore been transported or shipped in interstate commerce. The Government only has to prove that the defendant, having been before convicted of a crime of violence, had in his possession a pistol, then the law presumes that it was transported in interstate commerce; and the burden is cast on the defendant to explain such possession to the satisfaction of the jury; otherwise the evidence is sufficient to convict.

The Government cites Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 471, 69 L.Ed. 904, convicted of concealing a quantity of opium in August, 1923, after it was unlawful to import it and with knowledge that it had been unlawfully introduced into the United States contrary to the Act of Feb. 9, 1909, as amended (35 Stat. 614, Ch. 100, as amended Jan. 17, 1914; 38 Stat. 275, Ch. 9; Tit. 21, Sec. 171 et seq., U.S.Code, 21 U.S.C.A. § 171 et seq.).

This Act prohibited, with exceptions, the importation of opium in any form after April 1, 1909; and prohibited the concealment of such opium after importation, knowing the same to have been imported contrary to law. The Act contained two presumptive provisions: (1) that whenever the defendant is shown to have, or to have had, possession of such opium, "such possession shall be deemed sufficient evidence to authorize conviction unless the defendant [shall explain] the possession to the satisfaction of the jury;" and (2) that on and after July 1, 1913 *(more than four years after the Act went into effect)* "all smoking opium or opium prepared for smoking found within the United States shall be presumed to have been imported after the first day of April, nineteen hundred and nine, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

The Supreme Court said: "We think it is not an illogical inference that opium, found in this country *more than 4 years* (in the present case, *more than 14 years)* after its importation had been prohibited, was unlawfully imported." (Italics supplied.)

Certainly no one could argue that it was unreasonable for Congress to provide that after more than four years had elapsed since it was lawful to import opium into the United States, it would be presumed that opium found in a person's possession had been unlawfully imported and, in effect, that the burden of proof should shift. But here we have an act effective thirty days after its enactment (June 30, 1938). Prior to that time it was perfectly lawful for an ex-convict of the character in question to receive a firearm which had been shipped or transported in interstate commerce.

Again, the statute prohibiting smuggling and clandestine importations (Tit. 19, Sec. 1593, U.S.Code, provides in Subdivision (c), 19 U.S.C.A. § 1593(c): "Whenever, on trial for a violation of this Act [section], the defendant is shown to have * * * possession of such goods such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

This Act has been upheld by the Circuit Court of Appeals in Barone v. United States, 9 Cir., 1938, 94 F.2d 902, citing Yee Hem v. United States, supra. But it must be remembered that the guilty presumption from the fact of possession of smuggled goods does not dispense with the necessity for the Government to prove that the goods found in the defendant's possession were actually smuggled or clandestinely imported.

However, in Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 374, 72 L.Ed. 632, sustaining a conviction of unlawful purchase of morphine not in or from the original stamped package, the Supreme Court upheld a similar provision as to prima facie presumption of guilty. The provision of the narcotic statute (Act of Dec. 17, 1914, c. 1, as amended by the Act of Feb. 24, 1919, c. 18, Sec. 1006; 40 Stat. 1057, 1130, 1131, U.S.Code, Tit. 26, Sec. 692, 26 U.S.C.A. § 1043) provides that the absence of the required tax stamp from any of said drugs "shall be prima facie evidence of a violation

of this section [subsection] by the person in whose possession same may be found." Thus, the *unproved* allegation of purchase was *presumed* from the *fact of possession*. The Court, speaking through Mr. Justice Holmes, said: " * * * there are presumptions that are not evidence in a proper sense but simply regulations of the burden of proof." See, also, Morrison v. People of State of California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664.

■ What rational connection, sufficient to justify a transfer of the burden of proof, is there between proof of possession of a firearm, by an ex-convict of this class, and the presumption that it was unlawfully transported, shipped or received in interstate commerce? It is a well known fact, of course, that there are now and have been for years many pistols and revolvers in the possession of private citizens throughout the United States; and many for sale in hardware stores and other places of business. These had already come to rest although they may originally have been shipped or transported in interstate commerce. On the other hand, it is equally well known that relatively few, if any, of such firearms are manufactured in most of the states. Congress may have presumed that it would be difficult for an ex-convict, of the class under consideration, to secure a firearm locally; that he would have to arrange for it at some source of manufacture far distant; and that it would either be shipped to him or carried by him to other states due to the fact that, as pointed out above, this type of criminal roams over the country on the dodge.

No contention is made that the statute operates to preclude the defendant from the right to present his defense to the presumed fact of receipt or transportation in interstate commerce.

"The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." Morrison v. People of

State of California, supra [291 U.S. 82, 54 S.Ct. 284, 78 L.Ed. 664].

Now if the Government should show in this case that the defendant had been convicted of a crime of violence and that the firearm in question was found in his possession, he is in peculiar position to know from what source he received it. I do not believe it casts any undue burden upon him or subjects him to any unreasonable inconvenience to explain such possession to the satisfaction of a jury.

■■ Bearing in mind the presumption of the validity of an Act of Congress unless its unconstitutionality be clearly apparent, I, therefore, hold the challenged portions of the Federal Firearms Act (Sec. 902(f)) constitutional.

Second: Defendant's second proposition is that since the Federal Firearms Act makes proof of the prior conviction of a crime of violence a substantial and necessary factor in the crime of receiving a firearm in interstate commerce, it is an ex post facto law in its operation and effect; and is contrary to the provisions of Art. 1, Sec. 9, cl. 3, of the Constitution providing that: "No * * * expost facto Law shall be passed."

■ Of course, any law passed after the commission of the offense for which the defendant is tried which inflicts a greater punishment for the act than provided by law at the time the offense was committed, or which alters the situation of the accused to his disadvantage, is ex post facto and unconstitutional. In re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835; 1 Blackstone's Commentaries 46, Kring v. Missouri, 107 U.S. 221, 228, 2 S.Ct. 443, 27 L. Ed. 506, 508; Lindsey et al. v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182.

But as stated by Mr. Justice Gray in McDonald v. Com. of Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 390, 45 L.Ed. 542, in affirming a conviction under the Massachusetts habitual criminal act:

"The fundamental mistake of the plaintiff in error is his assumption that the judgment below imposes an additional punishment on crimes for which he had already been convicted and punished in Massachusetts and in New Hampshire.

"But it does no such thing. The statute under which it was rendered is aimed at habitual criminals; and simply imposes a heavy penalty upon conviction of a felony

committed in Massachusetts since its passage, by one who had been twice convicted and imprisoned for crime * * *. The punishment is for the *new crime only* * * *." (Italics mine.)

State habitual criminal acts providing for an increased punishment of second, third, and fourth offenders have been uniformly upheld as not violative of the Federal Constitution or of similar provisions in state constitutions, even though the offenses were committed prior to the enactment of such statute. These state decisions are enumerated in 16 C.J.S., Constitutional Law, § 450, page 901. The reason for the rule is that it is the second or future offense which is punished, not the first. See also Bailey v. State, 211 Ala. 667, 668, 101 So. 546, 547; In re Rosencrantz, 205 Cal. 534, 537, 271 P. 902, 904; Tribble v. State, 168 Ga. 699, 148 S.E. 593, 595; People v. Palm, 245 Mich. 396, 404, 223 N.W. 67, 69, People v. Gowasky, 244 N.Y. 451, 463, 155 N.E. 737, 741, 58 A.L.R. 9, 15.

The defendant says, however, that the Federal Firearms Act, passed long after his conviction for a crime of violence, is as to him an ex post facto law in that it alters his situation, to his disadvantage, from what it was at the time he committed the crime of which he was convicted. He earnestly argues, through able counsel appointed by the Court, that if he had known, before he committed the offense for which he was convicted in the State court in 1933, that in 1938 Congress would pass a law subjecting him to prosecution and punishment for a thing perfectly legal if done by the ordinary citizen, this knowledge might have deterred him from committing the first offense; and that, despite the legal reasonings in the habitual criminal cases, he is now punished again, in effect, for the crime of which he was convicted in 1933. This same argument may not have been as earnestly presented against the various habitual criminl acts, but it could have been.

Counsel seeks to make this distinction: that it is not necessary, in order to *convict* under the habitual criminal acts, to show a prior conviction but that such evidence merely enters into the picture to affect or fix the punishment; whereas, under the Federal Firearms Act, the allegation and evidence of prior conviction is *indispensable to conviction.* This distinction, however, is not such as to affect the application of the legal principles involved.

The Federal Firearms Act simply creates a *class* subject to its provisions, to-wit, persons who have been convicted of crimes of violence; and makes unlawful the receipt, transportation or shipment of firearms in interstate commerce by such persons. It does not seek to punish again *for crimes already committed.* The punishment provided, in event of conviction, is for the offense committed *after* the statute went into effect. It is, therefore, valid as against the challenge that it is ex post facto.

Two of the cases cited by the Government, Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549, and Bugajewitz v. Adams, 228 U.S. 585, 33 S.Ct. 607, 57 L.Ed. 978, are not in point. They deal with a deportation law authorizing the Secretary of Labor to expel aliens for criminal acts committed before its passage. These laws were held not to be ex post facto, but *on the ground that deportation,* while burdensome and severe for the alien, *is not a punishment.*

Defendant's motion to quash and his demurrer to the indictment is accordingly overruled. Counsel will prepare an order in accordance with this memorandum.