**Ex parte Romeo S. ALEGRIA.**

**No. 43785.**

Court of Criminal Appeals of Texas.

March 24, 1971.

Max L. Bennett, Corpus Christi, for appellant.

John H. Flinn, Dist. Atty., Sinton, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a post conviction habeas corpus proceedings wherein the petitioner, an inmate of the Texas Department of Corrections, seeks to challenge the constitutionality of Article 42.12, Sec. 15(a), Vernon's Ann.C.C.P., as amended 1967, insofar as it has application to his eligibility for parole under a life sentence imposed in 1961.

Petitioner contends that the statute relating to parole eligibility in effect at the time of the commission of the offense for which he was convicted and at the time he was convicted would authorize his eligibility for parole upon his life sentence following his cumulation of credit for 15 years [1]

---

[1]. Article 781d, Sec. 15, V.A.C.C.P., 1925, as enacted in 1957 provided in part:

"The Board is hereby authorized to release on parole with the approval of the Governor any person confined in any penal or correctional institution of this state, except persons under sentence of death, who has served one-third (⅓) of the maximum sentence imposed; provided that in any case he may be paroled after serving fifteen years; and provided further that where the maximum sentence is not four times as great as the minimum sentence, and the convict has served the minimum sentence, and where the maximum sentence is greater than four times the minimum sentence, and the convict has served one-fourth (¼) of the maximum sentence, such convict may be paroled during good behavior for the balance of the term imposed upon him. All paroles shall issue upon order of the Board, duly adopted and approved by the Governor."

This provision superseded and repealed Sec. 12 of Article 781b, V.A.C.C.P. 1925, enacted in 1947.

In the 1965 Code of Criminal Procedure, Article 781d, supra, became Article 42.12 and Section 15 thereof provided in part:

"The Board is hereby authorized to release on parole, with the approval of the Governor, any person confined in any penal or correctional institution of this State, except persons under sentence of

whereas the current statute under attack would increase such period to 20 years.[2] He advances the claim that the current statute enacted in 1967 must be given a prospective application only, and that insofar as it is being applied to him retrospectively by the State Board of Pardons and Paroles, it constitutes an ex post facto law and is violative of the federal and state constitutions. See Article I, Sec. 9, Cl. 3, Sec. 10, United States Constitution; Article I, Sec. 16, Texas Constitution, Vernon's Ann. St.

The question presented appears to be one of first impression in this state and will require some in depth consideration of the facts as well as the law applicable.

The petitioner Alegria was convicted in 1961 of rape in the 36th Judicial District Court of San Patricio County and the sentence imposed was "for not less than 5 years nor more than life." [3] There were other contemporary convictions in Aransas County which have now all been served and satisfied except for a 45 year conviction for robbery which is a concurrent sentence with aforementioned life sentence.[4]

The petitioner has filed a number of post conviction applications for writs of habeas corpus, many of which are not relevant here. Sometime prior to July 18, 1968, petitioner filed a habeas application in the United States District Court for the Southern District of Texas alleging that he was denied counsel at the time of the said rape conviction in San Patricio County. The State urged dismissal of the proceedings on the ground that even if the attack on the rape conviction was sustained he would not be entitled to release as a result of other unsatisfied sentences. Noting that McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, has been overruled by Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426, and citing the later decision of Stepp v. Beto, 5th Cir., 398 F.2d 814, the motion to dismiss on this ground was denied. The federal court did, however, dismiss the habeas application in the interest of comity to afford the state courts an opportunity to hold an evidentiary hearing. See Article 11.07, V.A.C.C.P.; Ex parte Young, Tex.Cr.App., 418 S.W.2d 824.

Thereafter a habeas application under the provisions of Article 11.07, V.A.C.C.P., was filed in the convicting court of San Patricio County alleging, among other things, the denial of counsel and contending for the first time that Article 42.12, Sec. 15(a), supra, as amended in 1967, was being unlawfully applied by the Board of Pardons and Paroles to determine his eligibility for parole under the life sentence in question. After an evidentiary hearing on October 24, 1968, the trial court entered its findings of fact and conclusions of law disposing of the contentions raised. The court found

death, who has served one-fourth of the maximum sentence imposed, provided that in any case he may be paroled after serving fifteen years. Time served shall be a total calendar time served and all credits allowed under the laws governing the operation of the Department of Corrections, and executive clemency. All paroles shall issue upon order of the Board, duly adopted and approved by the Governor."

2. Article 42.12, Sec. 15, supra, as amended in 1967 (Acts 1967, 60th Leg., p. 1745, ch. 659, Sec. 29, effective August 28, 1967) provides in part:
"The Board is hereby authorized to release on parole, with the approval of the Governor, any person confined in any penal or correctional institution of this State, except persons under sentence of death, who has served one-third of the maximum sentence imposed, provided that in any case he may be paroled after serving 20 calendar years. Time served on the sentence imposed shall be the total calendar time served and all credits allowed under the laws governing the operation of the Department of Corrections, and executive clemency. All paroles shall issue upon order of the Board, duly adopted and approved by the Governor."

3. The sentence was imposed in 1961 under the requirements of the indeterminate sentence law (Article 775, V.A.C.C.P., 1925) which is now Article 42.09, V.A. C.C.P., 1965.

4. The record before us reflects that in none of the post conviction habeas corpus pro-

that at the time of petitioner's rape conviction in 1961 upon a plea of guilty before a jury "he knew that an inmate of the penitentiary was eligible for parole after fifteen years of earned time, regardless of the number of years of the sentence or if it provided for a life sentence." The court concluded that application of the 1967 version of Article 42.12, Sec. 15(a), supra, to the petitioner by the Board of Pardons and Paroles and requiring 20 years service on a life sentence before being eligible for parole was "an ex post facto application of punishment and in violation of the constitutional rights of * * * petitioner." [5] The court concluded, however, the petitioner had no right to question such application until such time as he had attained eligibility for parole under the law in effect at the time of his conviction.

The record of such proceedings was transmitted to this court and denied on July 14, 1969, without written order on the trial court's findings and conclusions.

Thereafter the petitioner returned to the aforementioned federal court again seeking habeas corpus relief. Noting that petitioner had this time asserted in federal court the unconstitutionality of the Texas Parole Law as applied to him, since it in effect raised the minimum sentence for life termers from 15 to 20 years, and observing the previous conclusion of the San Patricio County District Court and the fact that the petitioner had now accumulated credit for more than 15 years time, the federal court, again in the interest of comity, declined to rule upon the constitutionality of the state statute in question until this

court had been given an opportunity to pass upon the matter presented and the construction of the statute involved.

Thereafter petitioner returned to the convicting court and after a hearing on the new habeas application filed, the court found the petitioner Alegria "now eligible for consideration of parole," [6] under the statute (Article 781d, V.A.C.C.P., 1957) in existence at the time of his conviction and sentence in 1961, and the court concluded Article 42.12, Sec. 15(a), supra (1967) "insofar as it requires twenty years time served before being eligible for consideration for parole is an ex post facto application of punishment and violative of petitioner's constitutional rights."

The record was then transmitted to this court, has been filed and submitted, and we are now confronted with the question presented.

■ At the outset it may well be questioned whether this court possesses jurisdiction to dispose of the question raised by virtue of the habeas corpus writ as petitioner does not seek outright release or discharge but only a determination of his eligibility for parole. Under former holdings of this court, i. e., Ex parte Rios, Tex. Cr.App., 385 S.W.2d 677, whose underpinning was McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, a serious question might well be presented. However, the doctrine of McNally v. Hill, supra, was laid to rest with proper respect by the decision of Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426. See also Lydy v. Beto, 5th Cir., 399 F.2d 59.

---

ceedings was much information developed concerning the said 45 year conviction, apparently on the ground that if the petitioner was legally eligible for parole under his life sentence the concurrent 45 year sentence would not prevent consideration of his eligibility for parole either under the ⅓ or 15 year requirement of Article 781d, V.A.C.C.P., 1957, in effect at the time of such convictions.

5. It has been made to appear that after the effective date of the 1967 amendment

to Article 42.12, Sec. 15, supra, the Board of Pardons and Paroles applied its terms retroactively with regard to a determination of petitioner's eligibility for parole.

6. At the time it was shown to the judge of the convicting court that as of March 31, 1970 petitioner had credit for 15 years, 3 months and 15 days on his concurrent sentence. It has now been made to appear that as of February 22, 1971, the petitioner has credit for 16 years, 9 months and 10 days on his sentences.

■ Any law is an ex post facto law which inflicts a greater punishment than the law annexed to the crime when committed, or which alters the situation of the accused to his disadvantage. See Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648; In re Medley, 134 U.S. 160, 10 S.Ct. 384, 33 L. Ed. 835; Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182. See also In re Valenzuela, 275 Cal.App.2d 483, 79 Cal.Rptr. 760.

In the Interpretive Commentary to Article 1, Sec. 16, of the Texas Constitution (Vol. I, pp. 371, 372, Vernon's Constitution of the State of Texas, Annotated), it is written:

"An ex post facto law, constitutionally speaking, is one that makes an action done before the passage of the law, and which was innocent when done, criminal, and punishes such action, De Cordova v. Galveston, 4 T.[Tex.] 470 (1849); that aggravates a crime, or makes it greater than it was when committed, Holt v. State, 2 T.[Tex.] 363 (1847); that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed, Holt v. State, supra; or which changes the rules of evidence, and receive less or different testimony, than the law required at the time of the commission of the offense in order to convict the offender. Holt v. State, supra. Although ordinarily laws changing procedure are not within the inhibition, still if a procedural change is retroactive and results in depriving the accused of substantial protection, it is unconstitutional. Ex parte Roper, 61 [Tex.]Cr.R. 68, 134 S.W. 334 (1911).

"The Texas Constitution goes further than the United States Constitution for the former is not confined to forbidding ex post facto laws, i. e., retroactive penal legislation, but it also lays a ban on any retroactive law. In prohibiting retroactive laws, the Texas Constitution seeks to safeguard rights not guaranteed by other constitutional provisions such as the impairment of the obligation of contracts and due process of law clauses. Mellinger v. City of Houston, 68 T. [Tex.] 37, 3 S.W. 249 (1887).

"A retroactive law is one meant to act on things that are past. As such, a statute is retroactive which takes away or impairs vested rights acquired under existing laws, or creates new obligations, imposes new duties, or adopts a new disability in respect to transactions or considerations already past, and which affects acts or rights accruing before it came into force. Turbeville v. Gowdy, [Tex.]Civ.App., 272 S.W. 559 (1925)."

It is well settled that a legislative act increasing the sentence to be given an offender for a crime committed before the law is enacted would be ex post facto and constitutionally prohibited.

A much more complicated situation is presented when the legislative enactment does not increase the sentence but, in some other manner, alters the punishment to the detriment or disadvantage of the individual after the crime has been committed, or as in the case at bar, after sentence has been imposed and service thereunder has commenced.

In Lindsey v. Washington, supra, the United States Supreme Court noted the ex post facto clause of the Federal Constitution looks to the standard of punishment prescribed by a statute rather than to the sentence actually imposed, and an increase in the possible penalty may be a violation of the clause regardless of the length of the sentence actually imposed. Observing that there was no necessity to inquire whether there was a technical increase in the punishment annexed to the crime, the court said:

"The Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer."

And in Love v. Fitzharris, 311 F.Supp. 702 (U.S.Dist.Ct., N.D.Calif.) the court noted that both federal and state courts have determined that increases in parole requirements by legislative enactment are subject to this variation of the ex post facto principle and cited authorities.

In the early Texas case of In re Hunt, 28 Tex.App. 361, 13 S.W. 145 (Feb. 1, 1890), it was held that the 1889 act amending Rev.St.Tex. Art. 3597 and reducing from one dollar to fifty cents the rate per day allowed a county convict as credit on his fine and costs when working the same out by manual labor, does not apply to a judgment which was rendered, and in process of execution, prior to the passage of the act since under Article I, Sec. 16 (Texas Constitution) every law which changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed is ex post facto.

There the court said:

"We think the law in force at the time the judgment was rendered was, in this particular case, the law which regulated the mode and manner of its satisfaction; and that the subsequent act did not affect it, and should not do so, especially in view of the fact that it is more onerous upon the defendant, by increasing the term or duration of his punishment. 'Laws which change the punishment, and inflict a greater punishment than the law annexed to the crime when committed,' are ex post facto, and within the inhibition of the constitution. Const. Tex. art. 1, § 16; Murray v. State, 1 Tex.App. 417; Maul v. State, 25 Tex. 166; 7 Amer. & Eng. Cyclop. Law, 527."

In State ex rel. Woodward v. Board of Parole, 155 La. 699, 99 So. 534, it was held the right of one sentenced to life in the penitentiary when the Louisiana law then in force permitted parole of life termers to have his application for parole considered was not affected by a subsequent act excluding a life termer from the benefits of parole, since to give such law a retrospective effect would constitute a violation of the constitutional inhibition against ex post facto laws, even though parole at the time of such conviction was discretionary. The Louisiana Supreme Court reached this decision in 1924 even though the Board upon whose recommendations parole could be granted for life termers had been abolished and a new parole board had been created which was deprived of jurisdiction in the case of life termers. The court ruled the new board could nevertheless determine the parole application of one sentenced to life under the former term.

In re Griffin, 63 Cal.Rptr. 757, 48 Cal. Rptr. 183, 408 P.2d 959, was a California case in which the Supreme Court of that state, in construing a new law changing eligibility for parole after Griffin was sentenced on parole, stated:

"Whatever the technical nature of a parole may be, from a realistic point of view it is our opinion that such a statute increases the punishment rather than decreases it. * * * It is elementary, of course, that a statute amended after an act is committed so as to increase the punishment cannot be made applicable to an accused, because to do so would run afoul of the prohibition against ex post facto laws." See also Greenfield v. Scafati, 277 F.Supp. 644 (D.Mass.1967) aff'd. 390 U.S. 713, 88 S.Ct. 1409, 20 L. Ed.2d 250 (1968).

Following the lead of In re Griffin, supra, the Nevada Supreme Court in Goldsworthy v. Hannifin, 468 P.2d 350, held unconstitutional as ex post facto a state statute changing parole eligibility insofar as it applied to the petitioner who was charged with commission of crime prior to the enactment of such statute, even though he was not convicted until after the effective date of the change in parole laws.

While recognizing that parole is not a constitutional right, the Nevada court held that if a legislature undertakes to enact

laws granting parole, those rights granted as acts of clemency or grace must be administered in accordance with due process and may not arbitrarily increase punishment previously imposed in an unequal and illogical manner.

Reaching similar results as the Nevada court was the Supreme Court of Montana in State ex rel. Nelson v. Ellsworth, 142 Mont. 14, 380 P.2d 886, and the Indiana Supreme Court in Dowd v. Sims, 229 Ind. 54, 95 N.E.2d 628, which cited with approval the early Texas case of In re Hunt, supra.

In Love v. Fitzharris, supra, the prisoner received notice of legal status setting his minimum eligible date of parole at three years and four months, under the Adult Authority's view of the controlling statute. Subsequently, he was given another notice of legal status informing him his earliest eligible date for parole was five years from the time he began to serve his sentences. Such subsequent notice was based upon a retroactive application of the Adult Authority's new interpretation (upon the advice of the Attorney General) of the relevant statute and the court concluded such action was violative of the ex post facto principle.

The court held the ex post facto principle in all its ramifications applies to any change in the law, whether by legislative amendment, judicial construction, or administrative re-interpretation.

In re Valenzuela, 275 Cal.App.2d 483, 79 Cal.Rptr. 760, is a California case which dealt with a petitioner who as a juvenile was committed to the Youth Authority. At the time he was confined the state law provided he should be discharged upon the expiration of a two year period of control or whenever he should reach his 21st birthday, depending on which occurred later. After he had been committed to the Youth Authority, the law was amended to provide that the period of detention could be extended for two years if certain conditions existed.

The California court held that these statutes, enacted after the commitment of offenses for which the prisoner had been originally confined and which provided that detention could be extended for two years at a time, if, upon reaching eligibility for discharge the Youth Authority determined without a jury trial that a prisoner is physically dangerous to the public, were ex post facto laws to the petitioner Valenzuela. And this was true even though the continued confinement was because of possible subsequent offenses since the initial offense was an indispensable element in the proceedings under which the prisoner continued to be confined.

■ In light of the foregoing, there can be little doubt that the application of Article 42.12, Sec. 15(a), supra (1967) by the Texas Board of Pardons and Paroles to this petitioner's 1961 rape conviction thereby automatically extending the time for parole eligibility consideration alters the situation of the petitioner to his disadvantage and is therefore ex post facto and unconstitutional. See United States v. Platt (D.C.Tex.1940) 31 F.Supp. 788, 792.

Instead of being eligible for immediate consideration for parole and the possibility of being allowed to go at liberty and pursue a livelihood under the restrictions of a parole, he must remain in confinement awaiting a further passage of time beyond that established by law in effect both on the date of the commission of the offense for which he was convicted and the date of his sentence.

Under both the federal and state constitutions the retroactive application of the 1967 amendment to Article 42.12, Sec. 15 (a), supra, to this petitioner's life sentence is violative of the ex post facto principle and petitioner's eligibility for parole is to be determined in accordance with former

Article 781d, V.A.C.C.P., in effect at the time of his conviction.[7, 8]

This holding does not entitle the petitioner to outright release or immediate release on parole. The decision to release or not an inmate of the Texas Department of Corrections, even though eligible for parole, remains within the sound discretion of the Board of Pardons and Paroles and the Governor of this State.

The application for writ of habeas corpus and relief prayed for is granted.

It is so ordered.

7. In connection with the petitioner's eligibility under Article 781d, supra, what was written in Attorney General's Opinion M–100 should be noted. The opinion in part reads:

"Prior to the enactment of Article 42.12, Section 15, by the 59th Legislature in 1965, wherein it was specifically provided that credit for earned good time would be allowed for parole under the provision 'after serving fifteen years,' The Adult Probation and Parole Law of 1947 (Article 781b, C.C.P., Section 12) and The Adult Probation Law of 1957 (Article 781d, C.C.P., Section 15) had provided for parole after serving 'fifteen years' but there was no specific statutory provision or authority under these statutes for allowing credit for good time served. Yet, the departmental practice and construction was consistently followed so as to allow the same, evidentially by virtue of Article 6184L. As early as 1943, with the enactment of Article 6184L, the Board of Pardons and Paroles, the Office of the Governor of Texas, and the prison authorities charged with the administration of the law, have followed such practice and construction. Since 1965, these officials have likewise uniformly so construed the sentence in Article 42.12, Section 15, 'Time served on the sentence imposed shall be the total calendar time served and all credits allowed under the laws governing the operation of the Department of Corrections and executive clemency.' This construction was that all convicts, including those sentenced for life, were eligible for parole after they had served the designated portion of the maximum sentence, which included calendar time served and credits allowed for good conduct. It also means that a person who is given a long term in prison, and those who received a life sentence, will only have to serve ⅓ or ¼ of the sentence, or fifteen or twenty years, whichever is less.

"This construction is evidenced in Ex parte Anderson, 149 Tex.Cr.R. 139, 192 S.W.2d 280 (1946), wherein it was also held that commutation rights earned for parole under the statute will be protected by our courts. If the statute be subject to construction, the applicable rule still obtains, both in civil and in criminal cases, that penal statutes are to be strictly construed against the state and in favor of the accused or prisoner. 53 Tex.Jur.2d, 304, Statutes, Sec. 198. In addition, the long standing departmental practice and interpretation of this statute, construed together with Article 6184L, which was enacted in 1943, is entitled to great weight in the courts, particularly where valuable rights, interests, or contracts have been acquired or earned thereby. 53 Tex.Jur. 2d 259, 260–261, Statutes, Sec. 177. It is there pertinently stated in part:

" 'The courts will ordinarily adopt and uphold a construction placed on a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and if the construction so given it is reasonable. In other words, the judiciary will adhere to an executive or departmental construction of an ambigious [sic] statute unless it is clearly erroneous or unsound * * *.' "

8. Petitioner has advanced his claim under the 15 year provision of the parole law, in effect at the time of his conviction. He makes no claim of eligibility for parole under the 1965 version of Article 42.12, Sec. 15(a), V.A.C.C.P., which was enacted subsequent to his conviction and confinement and which somewhat ameliorated the general requirements for parole eligibility but whose provisions were repealed by the 1967 amendment prescribing harsher requirements. Thus the question of the right of a petitioner to claim parole eligibility not under the statute in effect at the time of the commission of the offense and his conviction but under a statute ameliorating parole eligibility requirements even though such statute has been subsequently repealed is not presented or determined by the case at bar.