IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. AP-76,439 and AP-74,185





 

EX PARTE MAX MOUSSAZADEH, Applicant








ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM HARRIS COUNTY





 Johnson, J., delivered the opinion of the Court in which Price, Womack,
Keasler, Hervey, Cochran, and Alcala, JJ., joined. Keller, P.J., filed a
concurring opinion. Meyers, J., did not participate.



O P I N I O N



 Applicant pled guilty to the offense of murder without an agreement for punishment. The
trial court accepted the plea and sentenced applicant to seventy-five years' incarceration. On direct
appeal, the court of appeals affirmed the judgment of the trial court. Moussazadeh v. State, 962
S.W.2d 261 (Tex. App.--Houston [14th] 1998, pet. ref'd)(Moussazadeh I). Thereafter, applicant
filed an application for habeas corpus relief. In a published opinion, we denied relief because
applicant "failed to prove, by a preponderance of the evidence, that his plea was induced by a
misunderstanding of the applicable parole law which formed an essential element of the plea
agreement." Ex parte Moussazadeh, 64 S.W.3d 404, 413 (Tex. Crim. App. 2001), cert. denied, 537
U.S. 813 (2002) (Moussazadeh II, #AP-74,185). Applicant filed a subsequent application for writ
of habeas corpus, Moussazadeh III, #AP-76,439, that asserts that trial counsel's mistaken advice
regarding parole eligibility rendered his plea involuntary. We ordered the subsequent application
filed and set for submission. After applicant filed the subsequent application, he also filed a
suggestion for reconsideration that asks this Court, on its own motion, to reconsider its decision in
Moussazadeh II.

 This Court, on its own initiative, may reconsider a prior denial of habeas corpus relief. Tex.
R. App. P. 79.2(d). We now reconsider, on our own initiative, the claim raised in applicant's second
application for writ of habeas corpus, Moussazadeh II, (1) and grant relief. Applicant's subsequent
application, Moussazadeh III, is dismissed.

 In Moussazadeh II, we discussed how applicant, under indictment for a capital murder
committed on September 12, 1993, pled guilty to the reduced offense of murder without a sentencing
agreement. Applicant, a juvenile at the time of the offense, served as "look-out" while one of his
three co-defendants shot and killed a man during a robbery. Moussazadeh II, 64 S.W.3d at 406-07. 
While initially rejecting the state's offer of a guilty plea to the lesser offense of murder, ultimately
applicant agreed to plead guilty to murder without a punishment agreement. The agreement included
applicant's promise to testify at a co-defendant's trial, which he did. Id. at 407-09. During that
testimony, applicant indicated that he understood that, in pleading guilty to the murder offense and
because of parole-eligibility laws, he was facing a significantly lesser term of imprisonment than he
would have faced if convicted of capital murder. Id. at 408-09. After the co-defendant's trial ended,
applicant was sentenced to seventy-five years' incarceration without a deadly-weapon finding. Id.
at 409.

 Applicant's claim in his previous writ application, which we now reconsider, asserted that
"counsel's gross misadvice regarding parole eligibility rendered applicant's guilty plea involuntary." 
He argued that "the matter of parole eligibility was implicitly incorporated in [his] plea agreement." 
He also argued that his "guilty plea was involuntary even if the matter of parole eligibility was not
implicitly incorporated in the plea agreement." We quote from our opinion in Moussazadeh II.

 It is quite possible that no one in this proceeding knew that the parole law had
changed dramatically just 11 days before this robbery-murder. Applicant's parole
eligibility is measured by the law in effect on the date of the offense. Under the law
effective until September 1, 1993, a person serving a life sentence for capital murder
was not eligible for parole until serving a flat 35 years. Tex. Code Crim. Proc. Art.
42.18, § 8(b)(2). After September 1, 1993, that person was not eligible for parole
until serving a flat 40 years. Tex. Code Crim. Proc. Art. 42.18, § 8(b)(2) (effective
Sept. 1, 1993). Under the law effective until September 1, 1993, a person whose
conviction included a deadly weapon finding was not eligible for parole until he had
served a flat one-fourth of his sentence, up to a maximum of 15 years. Tex. Code
Crim. Proc. Art. 42.18, § 8(b)(3). After September 1, 1993, a person whose
conviction contained a deadly weapon finding was required to serve a flat one-half
of the sentence up to a maximum of 30 years. Tex. Code Crim. Proc. Art. 42.18, §
8(b)(3) (effective Sept. 1, 1993). Under the law effective until September 1, 1993,
a person convicted of murder (but whose conviction did not contain a deadly weapon
finding) was eligible for parole when his good time plus flat time equaled one-quarter
of the sentence up to 15 years. Tex. Code Crim. Proc. Art. 42.18, § 8(b)(3). After
September 1, 1993, a person convicted of murder was not eligible for parole until he
had served one-half of his sentence or 30 years. Tex. Code Crim. Proc. Art. 42.18,
§ 8(b)(3) (effective Sept. 1, 1993).


 The affidavits submitted by both applicant and his trial counsel with his
habeas application state that they did not know of these statutory changes. Indeed,
we may fairly infer from the record that the judge, prosecutor, and [the co-defendant's] counsel shared the same misunderstanding. However, neither trial
counsel's nor applicant's affidavits state that the prosecutor agreed to make applicant's
parole eligibility a term or essential element of the plea agreement. There is no
evidence that the prosecutor ever discussed any specific term or particular percentage
of the sentence that he believed applicant should or would serve in return for the
prosecutor's dropping the charges from capital murder to straight murder. In sum, we
are unable to find any evidence that proves the prosecutor or judge caused applicant
to plead guilty based upon an incorrect understanding of Texas parole law. [Citation
omitted.]


Id. at 409-10.

 In Moussazadeh II, we held that a finding that parole eligibility formed an essential part of
a plea agreement must be founded upon the express terms of the written plea agreement itself, the
formal record at the plea hearing, or the written or testimonial evidence submitted by both the
prosecution and the applicant in a habeas proceeding. Id. at 412. We were "unable to conclude . .
. that parole eligibility played any part, implicit or explicit, in the plea agreement made between the
prosecution and applicant." Id. at 413. We therefore "den[ied] applicant relief because he . . . failed
to prove, by a preponderance of the evidence, that his plea was induced by a misunderstanding of
the applicable parole law which formed an essential element of the plea agreement." Id. 
Acknowledging our prior holdings that a guilty plea is not rendered involuntary simply because the
defendant received and relied upon erroneous advice of counsel concerning parole eligibility, and
that both parole eligibility and parole attainment are highly speculative future facts, we likewise
rejected applicant's contention that his plea was involuntary regardless of whether the parole
eligibility misinformation was implicitly incorporated into the plea agreement. Id. at 413-14.

 The circumstances surrounding applicant's conviction are not in dispute. Prior to applicant's
plea, trial counsel advised applicant about his parole eligibility, and that advice was incorrect. As
we stated in Moussazadeh II, "The affidavits submitted by both applicant and his trial counsel with
his habeas application state that they did not know of these [recently effective] statutory changes [in
the parole-eligibility law]. Indeed, we may fairly infer from the record that the judge, prosecutor,
and counsel for [the co-defendant against whom applicant testified] shared the same
misunderstanding." Moussazadeh II, 64 S.W.3d at 410.

 Counsel's advice can provide assistance so ineffective that it renders a guilty plea
involuntary. Hill v. Lockhart, 474 U.S. 52, 56 (1985)(quoting McMann v. Richardson, 397 U.S. 759,
771 (1970); "voluntariness of the plea depends on whether counsel's advice 'was within the range
of competence demanded of attorneys in criminal cases.'"). A guilty plea is not knowing or
voluntary if made as a result of ineffective assistance of counsel. Ex parte Burns, 601 S.W.2d 370,
372 (Tex. Crim. App. 1980). A defendant's decision to plead guilty when based upon erroneous
advice of counsel is not done voluntarily and knowingly. Ex parte Battle, 817 S.W.2d 81, 83 (Tex.
Crim. App. 1991). See also Ex parte Harrington, 310 S.W.3d 452, 459 (Tex. Crim. App. 2010)
("When counsel's representation falls below this [Strickland] standard, it renders any resulting guilty
plea involuntary.").

 Applicant's initial application contended that "counsel's gross misadvice regarding parole
eligibility rendered applicant's guilty plea involuntary," "the matter of parole eligibility was
implicitly incorporated in [his] plea agreement," and that his "plea agreement was involuntary even
if the matter of parole eligibility was not implicitly incorporated in the plea agreement." Applicant
now asks this Court to reconsider his application in light of Padilla v. Kentucky, 559 U.S. ___, 130
S.Ct. 1473 (2010), and overrule our previous decisions in Ex parte Evans, 690 S.W.2d 274 (Tex.
Crim. App. 1985), and Moussazadeh II.

 The state contends that Padilla has no bearing upon the Court's disposition of applicant's
claim and that Ex parte Evans and Moussazadeh II are "still based upon sound logic regarding parole
eligibility and parole attainment as being highly speculative circumstances that does [sic] not render
a guilty plea involuntary."

 We conclude that both applicant and the state are partly correct: Padilla is not applicable to
the facts before us, and our decisions in Ex parte Evans and Moussazadeh II were incorrect. We now 
disavow our prior decisions in Ex parte Evans and Moussazadeh II to the extent that they (1) require
parole-eligibility misinformation to form an essential part of the plea agreement in order to make
a showing of an involuntary plea that resulted from ineffective assistance of counsel, based upon
such misinformation and (2) fail to appropriately recognize the distinction between parole eligibility
and parole attainment.

 We have previously held that, because of the extremely speculative nature of parole
attainment, advice from counsel concerning parole does not render a plea involuntary. Ex parte
Evans, 690 S.W.2d at 279. However, Evans stated that, because "eligibility for parole is a fluctual
[sic] societal decision; highly subject to change," id. at 278, an applicant must prove, by a
preponderance of the evidence, that parole eligibility was an affirmative part or essential element of
the plea bargain. (2) Id. This is an incorrect statement of the law. While the general eligibility rules
for parole may change over time, the eligibility rules remain the same for a given conviction. 
Likewise, an inmate who was eligible for mandatory release at the time of the offense remains
eligible for mandatory release on that conviction, even if that offense subsequently becomes eligible
for only discretionary mandatory release. "The statute in effect when the holding offense is
committed determines an inmate's eligibility for release on mandatory supervision or parole." Ex
parte Thompson, 173 S.W.3d 458, 459 (Tex. Crim. App. 2005). Evans held that, because parole
attainment was speculative, its "legal importance on the subject of voluntariness of a guilty plea"
should be "discounted." Ex parte Evans, 690 S.W.2d at 279. Then, based on its incorrect statement
of law, Evans made an erroneous logical leap and applied the same standard to parole eligibility. 
As a result, Evans held that erroneous advice as to either parole eligibility or parole attainment would
not render a plea involuntary. Id. In Moussazadeh II, we further conflated the concepts of eligibility
and attainment.


Although one can determine current parole eligibility with some degree of certainty,
it is really parole attainment that is significant to a plea bargaining defendant. It
matters very little that a person is eligible for parole in one year on a ten year
sentence if virtually no one is being paroled in less than seven or eight years on a ten
year sentence. It is for this reason that we have termed parole attainment "too
speculative to warrant being given effect upon" a defendant's guilty plea.


64 S.W.3d at 413, quoting Evans, supra.

 Contrary to our prior decisions, there are considerable, concrete distinctions between parole
attainment and parole eligibility. Parole attainment is indeed highly speculative, due to various
factors associated with circumstances surrounding an individual prisoner's parole application, such
as the prisoner's behavior in prison, the composition and attitude of the parole board, the identity and
attitude of the governor, the population of the prison system, and regulations governing "good time." 
See Ex parte Carillo, 687 S.W.2d 320, 325 (Tex. Crim. App. 1985) (Miller, J., concurring). The
question of parole eligibility, however, elicits a straightforward answer because an applicant's parole
eligibility is determined by the law in effect on the date of the offense. Ex parte Thompson, 173
S.W.3d at 459. The statutes that govern the punishment of a particular offense control the issue of
parole eligibility and are not subject to alteration, absent legislative amendment. Even in the event
of a legislative amendment making a law more stringent, an applicant is subject only to the law
governing parole eligibility at the time the offense was committed. See Ex parte Alegria, 464
S.W.2d 868, 874-75 (Tex. Crim. App. 1971) (retroactive application of parole statute that increased
defendant's cumulation of years required for parole eligibility violated ex post facto clauses of
United States and Texas Constitutions). (3) Parole-eligibility requirements are direct consequences
because they are a definite and largely automatic result of a guilty plea. See Mitschke v. State, 129
S.W.3d 130, 135 (Tex. Crim. App. 2004). Parole attainment, on the other hand, is not governed by
statute and is granted at the discretion of the parole board.

 On a claim of involuntary plea, the standard for the analysis of harm under the Strickland
protocol as expressed in these cases may be stated generally as "but for the erroneous advice of
counsel, the applicant would not have plead guilty." Ex parte Harrington, 310 S.W.3d at 458. See
also Ex parte Moody, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999); Ex parte Stephenson, 722
S.W.2d 426, 428 (Tex. Crim App. 1987).

 When deciding whether to accept or reject a plea offer, a defendant will likely consider the
actual minimum amount of time he will spend incarcerated. In order to properly consider his
options, a defendant needs accurate information about the law concerning parole eligibility. 
Although we continue to recognize the distinction between direct and collateral consequences, we
now hold that the question of whether parole eligibility forms an affirmative part or essential element
of the plea agreement is not determinative of this Court's deficient-performance inquiry under
Strickland.

 To obtain habeas corpus relief on a claim of involuntary plea, an applicant must meet both 
prongs of the Strickland standard: (1) counsel's performance "was deficient; and (2) that a
probability exists, sufficient to undermine our confidence in the result, that the outcome would have
been different but for counsel['s] deficient performance." Ex parte White, 160 S.W.3d 46, 49 (Tex.
Crim. App. 2004). In the context of involuntary plea, the "different outcome" is choosing not to
plead and instead choosing to go to trial.

 Counsel's performance is deficient if it is shown to have fallen below an objective standard
of reasonableness. Id. at 51; Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The
constitutionally appropriate level of reasonableness is defined by the practices and expectations of
the legal community and prevailing professional norms therein. Strickland, supra, at 688. In
situations in which the law is not clear, counsel should advise a client that pending criminal charges
may carry a risk of other serious consequences. When a serious consequence is truly clear, however,
counsel has an equally clear duty to give correct advice. Both failure to provide correct information
and providing incorrect information violate that duty.

 The terms of the relevant parole-eligibility statute are succinct and clear with respect to the
consequences of a guilty plea. Based upon the date in which the instant offense was committed, Tex.
Code Crim. Proc. art. 42.18 § 8(b)(3) clearly and succinctly provided that "a person convicted of
murder was not eligible for parole until he had served one-half of his sentence or thirty years." 
Moussazadeh II, supra, at 409. Applicant's counsel could have easily determined the applicable
parole-eligibility requirements simply by reading the text of the statute. Instead, applicant's counsel
failed to inform him of changes in the parole-eligibility statutes that essentially doubled the length
of time he must serve before becoming eligible for parole. The fact that the amendments took effect
only eleven days before the offense is of no consequence. (4)

 The performance of applicant's counsel was deficient: the consequences of applicant's plea
could have been easily determined by reading the applicable statute. Parole-eligibility requirements
are presumptively mandatory, and applicant's trial counsel provided incorrect advice. We conclude
that applicant has sufficiently proved that his counsel was constitutionally deficient.

 The portion of applicant's sentence that must be served before he becomes eligible for parole
was double the portion that he was led to believe he must serve. Based on applicant's affidavit of
January 13, 1997, (5) we also conclude that applicant would not have pled guilty if he had known the
actual time he would have to serve, and thus prejudice is shown. We find that the habeas court's
findings of fact and conclusions of law are supported by the record and agree that relief should be
granted.

 Accordingly, upon reconsideration, we grant relief. The judgment in this cause is hereby
vacated, and applicant is remanded to the custody of the Harris County Sheriff to answer the charges
set out in the indictment. The trial court shall issue an appropriate bench warrant within ten days
after the mandate of this Court issues. Copies of this opinion shall be sent to the trial court and to
the Texas Department of Criminal Justice, correctional institutions division.


Delivered: February 15, 2012

Publish
1. Applicant's first application sought an out-of-time appeal, which we granted. Ex parte Moussazadeh, No.
AP-72,200 (Tex. Crim. App. delivered October 25, 1995) (not designated for publication). Such an initial
application seeking an out-of-time appeal does not constitute a challenge to the conviction and does not bar
subsequent writ applications. Ex parte McPherson, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000).
2. See also Ex parte Trahan, 781 S.W.2d 291, 292-93 (Tex. Crim. App. 1989) (written plea memorandum
reflected that applicant would become eligible for parole consideration after having served one-fourth of sentence;
habeas relief available when that was not the law and terms of plea agreement were impossible to fulfill). 
3. A law that changes the punishment for a crime after the crime has been committed is an unconstitutional
ex post facto law only if it inflicts a greater punishment than did the previous law. Ex parte Tate, 471 S.W.2d 404,
406 (Tex. Crim. App. 1971)(op. on reh'g); Ex parte Scott, 471 S.W.2d 54, 55-6 (Tex. Crim. App. 1971). "[A]
statute which mitigates the rigor of the law in force at the time a crime was committed cannot be regarded as ex post
facto with reference to that crime." Rooney v. North Dakota, 196 U.S. 319, 325 (1905).
4. Parole eligibility is not speculative. In this case, parole eligibility was statutorily determined and, at the
time of the plea, there was no speculation about those statutory terms. Those terms of parole eligibility were clear,
succinct, and explicit. It appears that all parties involved were unaware that parole eligibility had changed
significantly just a few days before the commission of the alleged offense.
5. "Had Judge Azios, Mr. Jones, or Mr. Cogdell told me that a murder conviction would require me to serve
aggravated time of one-half of my sentence, up to a maximum of 30 years, even without a deadly weapon finding, I
would not have accepted the plea bargain."