[Civ. No. 44264. First Dist., Div. Four. Dec. 7, 1978.]

LEE EVERETT TALLEY, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SOUTHERN JUDICIAL
DISTRICT OF SAN MATEO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

[Civ. No. 44400. First Dist., Div. Four. Dec. 7, 1978.]

C. DeWITT BAYES, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SOUTHERN JUDICIAL
DISTRICT OF SAN MATEO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

[Civ. No. 44430. First Dist., Div. Four. Dec. 7, 1978.]

EDWIN BROOKS, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SOUTHERN JUDICIAL
DISTRICT OF SAN MATEO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

[Civ. No. 44401. First Dist., Div. Four. Dec. 7, 1978.]

ARTHUR STUART BLUM, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SOUTHERN JUDICIAL
DISTRICT OF SAN MATEO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Bennett, Hughes, Kane & Till and Dick W. Bennett for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

Evelle J. Younger, Attorney General, and Gordon Zane, Deputy Attorney General, for Real Party in Interest and Respondent.

**OPINION**

**BRUNN, J.**\*—The important date in these cases is January 1, 1978. Before the year turned appellants were charged with what is commonly known as driving under the influence or drunk driving or, more precisely,

---

\*Assigned by the Chairperson of the Judicial Council.

violations of Vehicle Code section 23102, subdivision (a). Each appellant was also charged with at least one prior conviction of the same offense.

After January 1, 1978, each appellant was convicted of violating section 23102, subdivision (a) and one prior.

Each appellant applied for entrance into an alcohol treatment program certified under Statutes 1977, chapter 890 (hereafter chapter 890; the statute has become widely known by its bill number, Sen. Bill No. 38.) Successful participation in such a program avoids the mandatory license suspension provisions of the Vehicle Code. Appellants were denied entrance solely on the ground that the statute, by its express terms, applies only to offenses committed after January 1, 1978. (Welf & Inst. Code, § 19975.13.)

Not surprisingly appellants would like to have this date limitation invalidated. The San Mateo County Superior Court declined to do so. We entirely agree with the trial court and affirm.

I

Chapter 890 and its Background

Chapter 890 is the result of a thoughtful and modern legislative approach: First the Legislature establishes an experimental program limited in time and place.[1] If the Legislature is satisfied with the outcome, it expands the program. The benefits of starting with small-scale, relatively low-cost experiments are obvious.

In the drunk driving situation the Legislature initially set up a pilot program in four counties. (Stats. 1975, ch. 1133; this measure also became known by its bill number, Sen. Bill No. 330.) The program permitted persons convicted of drunk driving to retain their drivers licenses if they participated in and successfully completed a one-year alcoholism treatment program.

Two years later, chapter 890 made the pilot program statewide. The bill extended the benefits of the 1975 legislation to persons in the

[1]Illustrations of contemporary experimental programs include the pilot project for economical litigation. (Code Civ. Proc., §§ 1823-1833.2; Cal. Rules of Court, rule 1701 et seq.; and the small claims court experimental project, Code Civ. Proc., §§ 118-122.2.)

remaining 54 counties who committed the offense after January 1, 1978.[2] (Ch. 890, § 4; Welf. & Inst. Code, § 19975.13.)

As the 1977 legislation is now attacked for the limitation of its starting time, the 1975 statute was challenged because of its geographical limits. The attack on the latter failed. (*McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005 [140 Cal.Rptr. 168]; *Department of Motor Vehicles* v. *Superior Court* (1976) 58 Cal.App.3d 936 [130 Cal.Rptr. 311].)

As in these cases, appellants here attack the limitation on equal protection grounds. In addition they contend that chapter 890 mitigates punishment and should therefore be applied retroactively under the *Estrada* rule. We will consider the latter argument first.

## II

### The *Estrada* Rule

■ *In re Estrada* (1965) 63 Cal.2d 740, 744 [48 Cal.Rptr. 172, 408 P.2d 948], held that "[i]f the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies."

*Estrada* does not help appellants for two reasons. First, it reached its conclusion by fathoming legislative intent: "The problem, of course, is one of trying to ascertain the legislative intent—did the Legislature intend the old or new statute to apply? *Had the Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so.* We must, therefore, attempt to determine the legislative intent from other factors." (63 Cal.2d at p. 744, italics added.)

Here, of course, the Legislature has expressly stated that chapter 890 applies only to offenses committed after January 1, 1978.

■ Secondly, chapter 890 does not lessen punishment. "The suspension or revocation of a license [by the Department of Motor Vehicles] is not penal. . . ." (*Beamon* v. *Dept. of Motor Vehicles* (1960) 180

---

[2]Chapter 890 amends Vehicle Code sections 13201.5 and 13352.5, adds Vehicle Code section 23102.1 and Welfare and Institutions Code section 19975.01 et seq.

Cal.App.2d 200, 210 [4 Cal.Rptr. 396]; *Goss* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 268, 270 [70 Cal.Rptr. 447]; *United States* v. *Best* (9th Cir. 1978) 573 F.2d 1095, 1099.)

III

Equal Protection

Appellants' equal protection arguments are equally lacking in merit.

■ They contend that they are denied uniform sentencing procedures. The short answer is *Estrada, supra,* 63 Cal.2d 740, which stated lucidly that *the Legislature is not compelled to give sentencing changes retroactive effect.*

■ They also argue that administrative convenience is not an adequate justification for making the program available only to persons who engage in drunk driving after January 1, 1978.

In evaluating this claim we observe at the outset that neither a suspect classification nor a fundamental interest is involved here. (*Department of Motor Vehicles* v. *Superior Court, supra,* 58 Cal.App.3d 936; *McGlothlen* v. *Department of Motor Vehicles, supra,* 71 Cal.App.3d 1005.) ■ Accordingly, "the applicable equal protection standard of review is the so-called 'traditional' or 'restrained' standard of review, under which the judiciary affords challenged legislation a presumption of constitutionality." (*Cooper* v. *Bray* (1978) 21 Cal.3d 841, 847 [148 Cal.Rptr. 148, 582 P.2d 604].)

*Cooper* v. *Bray* also teaches us that under that standard a court must "conduct 'a serious and genuine judicial inquiry' into the correspondence between the classification and the legislative goals.' " (21 Cal.3d at p. 848; the court is quoting with approval from *Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254].) *Cooper* and *Newland* deliberately move away from older equal protection "tests," such as the rational-relationship-to-a-conceivable-legitimate-state-purpose formula or the substantial-relation-to-the-object-of-the-legislation test. The mandate is to make the "serious and genuine judicial inquiry," rather than to take refuge in familiar formulations.

In the statute before us, unlike many others, the Legislature expressly stated its reasons for applying the program only prospectively: "The Legislature finds and declares that, in order to provide for orderly and effective implementation of this article, to prevent the courts and programs in each county from being overburdened at the commencement of the implementation of this article, and to protect the public health and safety, this article shall apply only on a prospective basis." (Welf. & Inst. Code, § 19975.13.)

In enacting chapter 890, the Legislature was, as we have seen, making a small pilot program statewide. The Legislature could and did rationally conclude that prospective operation was desirable to avoid the risk of a flood of applicants, which would create chaos in the new programs and render them ineffective. The Legislature presumably had before it the experience of the pilot programs and quite properly made an effort to ensure that the transition would be orderly and effective.

The present case presents an even stronger one in favor of constitutionality than *Johnson* v. *Municipal Court* (1977) 70 Cal.App.3d 761 [139 Cal.Rptr. 152]. There defendant could not be accommodated because of lack of space, in an alcohol detoxification facility. The facility had been set up under Penal Code section 647, subdivision (ff) as an alternative to prosecution for the offense of being intoxicated in a public place. Since there was no room for the defendant he was prosecuted.

The court held he was not denied equal protection. It noted that section 647, subdivision (ff) is "an experiment in an effort to devise a method of dealing with the problem of alcoholism," that "[t]he state is not required 'to strike at all evils at the same time' " and that a "legislature may 'take reform "one step at a time." ' " (70 Cal.App.3d at pp. 764, 765.)

The consequences for the defendant in *Johnson* were more drastic than appellants' situation: Mr. Johnson was prosecuted because the program was unavailable; in the present case appellants' drivers licenses are subject to suspension. Here, as in *Johnson,* we deal with an experiment in the treatment of persons with alcohol problems. Here as there the Legislature has created an additional option in a commendable effort to lessen the staggering human toll and social costs of alcoholism. And, here, by mandating prospective operation, the Legislature has sought to reduce the precise problem that confronted Mr. Johnson, namely, that there would be no room in the program.

Every effort aimed at meliorating the many ways in which we make life hard for ourselves and for others has to start at some point. The Constitution does not compel that such programs immediately—or at any time (see *Johnson*)—be open to all who want to get into them. Here the program's prospective operation fully accorded with the clear legislative objective of moving carefully, experimentally, by stages, toward providing an additional alternative designed to lessen recidivist and dangerous behavior brought about by excessive drinking.

The comments of Justice Kaus in *People* v. *McNaught* (1973) 31 Cal.App.3d 599, 608-609 [107 Cal.Rptr. 566], are applicable. *McNaught* upheld the detoxification program involved in *Johnson*; the equal protection attack in *McNaught* was based on a lack of geographical uniformity. The court said: "The very fact that we may be in basic sympathy with the progressive intent of section 647, subdivision (ff), compels us to look critically at a claim that it denies equal protection to those whom it does not benefit. *McDonald* v. *Board of Election,* 394 U.S. 802 [22 L.Ed.2d 739, 89 S.Ct. 1404], involved an Illinois statute which enables certain classes of eligible voters to vote by absentee ballot. The statute was attacked on equal protection grounds by inmates of the Cook County jail, who were awaiting trial on nonbailable offenses, or could not afford to make bail. They were not covered by the statute. In refusing relief, the court observed: 'Ironically, it is Illinois' willingness to go further than many States [fn. omitted] in extending the absentee voting privileges . . . that has provided appellants with a basis for arguing that the provisions operate in an invidiously discriminatory fashion to deny them a more convenient method of exercising the franchise. Indeed, appellants' challenge seems to disclose not an arbitrary scheme or plan but, rather, the very opposite—a consistent and laudable state policy of adding, over a 50-year period, groups to the absentee coverage as their existence comes to the attention of the legislature. That Illinois has not gone still further, as perhaps it might, should not render void its remedial legislation, which need not, as we have stated before, "strike at all evils at the same time." *Semler* v. *Dental Examiners,* 294 U.S. 608, 610 (1935).' (*McDonald* v. *Board of Election, supra,* 394 U.S. at pp. 810-811 [22 L.Ed.2d 739 at pp. 746-747].)"

We conclude that the legislative determination to give prospective effect to chapter 890 is valid[3] and that the trial court correctly so relied.

[3]In reaching this conclusion we attach no weight to the declaration by the administrative assistant to the author of chapter 890. This declaration was presented by respondents and purports to address legislative intent. While courts have considered legislators'

Affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

declarations in appropriate cases (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371]; *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049]), declarations by aides are of even less value and are fraught with risks (see *Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 881 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]). Their use is particularly troubling where, as here, they purport to recite facts that are not subject to cross-examination. Reliance on such extrinsic aids is also unnecessary where, as here, the legislative objectives are clear on the face of the statute. For a thoughtful discussion of materials relating to legislative intent, including declarations, see Smith, *Legislative Intent: In Search of the Holy Grail* (Sept.-Oct. 1978) 53 State Bar J. 294.