[Civ. No. 54183. First Dist., Div. Two. Mar. 16, 1983.]

CHARLES EDWIN LEE, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

276

## COUNSEL

Alfred C. Cavagnaro for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Marian M. Johnston, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**SMITH, J.**—Petitioner and appellant Charles Edwin Lee appeals from a denial of a petition for writ of mandamus or prohibition challenging a decision by respondent Department of Motor Vehicles (DMV) to suspend appellant's driver's license.

On the night of March 18, 1981, appellant was arrested for driving under the influence of alcohol. There is no dispute that the arresting officer, Sergeant Canning of the San Bruno Police Department, had reasonable cause to arrest appellant. After Sergeant Canning read appellant the Vehicle Code section 13353 admonition[1] and his *Miranda* rights, appellant agreed to take a blood test.

A few minutes after appellant was stopped, Officer Sezgen of the San Bruno Police Department arrived at the arrest scene as a "cover" for Sergeant Canning. Officer Sezgen was present while Sergeant Canning questioned appellant, administered roadside sobriety tests and read the section 13353 admonition and

---

[1]All statutory section references are to the Vehicle Code unless otherwise indicated.
The following is the section 13353 admonition read by Sergeant Canning to appellant: "You are required by state law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath, or urine. If you refuse to submit to a test, or fail to complete a test, your driving privilege will be suspended for a period of six months. You do not have the right to talk to an attorney, or have an attorney present, before stating whether you will submit to a test, before deciding which test to take, or during the administration of the test chosen. If you are incapable or state your are incapable of completing the test you choose you must submit to and complete any of the remaining tests or test. If you refuse to submit to a test the refusal may be used against you in a court of law."

*Miranda* rights. However, Officer Sezgen testified that he was not really paying attention to what Sergeant Canning was actually saying or doing. Sergeant Canning requested Officer Sezgen to take appellant to the north county jail in Daly City for testing and booking.

According to Officer Sezgen's testimony, upon arrival at the jail, appellant refused to take any tests, even though Officer Sezgen reminded appellant that he would lose his license if he did not take one of the three chemical tests.

Appellant admits that Sergeant Canning read him the section 13353 admonition and his *Miranda* rights, and that he agreed to a blood test. However, appellant testified that he did not remember discussing his rights with Officer Sezgen or refusing to take the test.

According to appellant, sometime during the booking process he sustained a head injury which caused a two-inch "scar" over his right eye. Appellant claims that the injury left him in a state of shock or unconsciousness and that, as a consequence, he could not have effectively refused to take the test. DMV does not dispute that appellant did sustain such an injury, but maintains that appellant's refusal to submit to a test occurred before the injury. Appellant reasons that because the booking sheet, which mentions the scar, lists "2305" as the time of booking, while the officer's statement lists "2315" as the time of refusal, he must have sustained the injury before his refusal. Officer Sezgen explained the earlier time by offering that he may have written down the hour when he filled out the booking sheet and that the notation as to the scar was not on the booking sheet when *he* filled it out.

Appellant was released later that night. DMV issued an order of suspension of appellant's driver's license on April 6, 1981. Appellant made a timely request for a formal hearing which was held on May 27, 1981. Based on the evidence presented during this hearing, DMV issued a decision suspending appellant's driver's license for six months for failure to comply with the requirements of section 13353.

Appellant filed a petition for writ of prohibition or mandate in the Superior Court of San Mateo County, seeking to set aside DMV's decision. The petition was denied by a judgment dated October 21, 1981.

This timely appeal followed on November 18, 1981.

Appellant's first contention, referred to in the briefs as the "surrogate issue," is that, because the test was not going to be administered by the arresting officer

who had reasonable cause, appellant did not violate section 13353[2] even if he did refuse to submit to a chemical test for intoxication.

 We agree with DMV that the language in the statute requiring the test to be administered "at the direction" of an arresting officer with reasonable cause means that the arresting officer need only order that the test be given. The statute does not say that the arresting officer must personally administer the test[3] or even that the test must be administered in the presence of the arresting officer. We therefore conclude that the delegation to Officer Sezgen was permissible.

Appellant makes numerous policy arguments as to why delegation should not be allowed. The essence of these arguments is that the statute designed to protect the arrestee's due process rights which may be violated if the administration of the tests is not limited to the arresting officer. Nevertheless, he gives no factual or legal support for his arguments. In fact, he does not cite any cases at all on this issue.[4]

---

[2]At the time of appellant's arrest, section 13353 provided, in pertinent part: "(a)(1) Any person who drives a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public shall be deemed to have given his or her consent to a chemical test of his or her blood, breath, or urine for the purpose of determining the alcoholic content of his or her blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe that person was driving a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public while under the influence of intoxicating liquor. The person shall be told that his failure to submit to, or the noncompletion of, a chemical test will result in the suspension of the person's privilege to operate a motor vehicle for a period of six months. [¶] (b) If any person refuses the officer's request to submit to, or fails to complete, a chemical test, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle upon a highway or upon other than a highway in areas which are open to the general public while under the influence of intoxicating liquor and that the person had refused to submit to, or did not complete, the test after being requested by the officer, the department shall suspend the person's privilege to operate a motor vehicle for a period of six months. . . ."

[3]Under section 13354, subdivision (a), only certain licensed medical personnel may administer a blood test. Officer Sezgen was delegated the task of taking appellant to such a person, and not to administer the test himself.

[4]Our own research has disclosed no case precisely on point. Respondent cites a number of cases which involved situations where an officer completed an arrest which was commenced by another officer or citizen. (*Freeman* v. *Dept. Motor Vehicles* (1969) 70 Cal.2d 235 [74 Cal.Rptr. 259, 449 P.2d 195]; *People* v. *Jourdain* (1980) 111 Cal.App.3d 396, 406 [168 Cal.Rptr. 702]; *Green* v. *Department of Motor Vehicles* (1977) 68 Cal.App.3d 536, 542 [137 Cal.Rptr. 368]; *People* v. *Bianco* (1975) 55 Cal.App.3d Supp. 8, 10 [127 Cal.Rptr. 92].) These cases are not helpful, however, because they involved completely different fact situations from that present here.

Although the parties did not cite the following cases, we find them to be pertinent to the issue at hand. In *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, at page 599 [130 Cal.Rptr. 91], the court stated: "*In most cases* it will be the arresting officer who will . . . either give the test or take the suspect to a facility where a test can be administered." (Italics added.) By using the words "in most cases," the court implied that the arresting officer does not necessarily have to

■ Section 13353 was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; *People* v. *Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867, 869 [71 Cal.Rptr. 111].) The immediate purpose of section 13353 is to enable the police to obtain the best evidence of an arrestee's level of intoxication at the time of arrest. (*Kesler* v. *Department of Motor Vehicles, supra,* at p. 77; *McConville* v. *Alexis* (1979) 97 Cal.App.3d 593, 602 [159 Cal.Rptr. 49]; *Zidell* v. *Bright, supra,* at p. 870.) In order to obtain evidence with probative value, it is necessary to administer the test as soon as possible after the arrest—before the intoxicating effect of the alcohol diminishes. (*McConville* v. *Alexis, supra,* at p. 602; *Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598-599 [130 Cal.Rptr. 91].) The long range purpose is to deter intoxicated persons from driving on the highways. (*Kesler* v. *Department of Motor Vehicles, supra,* at p. 77; *Zidell* v. *Bright, supra,* at p. 870.)

The Legislature also intended the statute to "obviate incidents of violence that may be expected when a recalcitrant inebriate is tested by force as under proper circumstances the police have a right to do." (*McDonnell* v. *Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 662 [119 Cal.Rptr. 804].) Thus, "[t]he effect of this legislation is to equip peace officers with an instrument of enforcement not involving physical compulsion." (*People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 765 [100 Cal.Rptr. 281, 493 P.2d 1145].)

■ Nothing in the foregoing cases indicates a statutory purpose or policy which militates against the type of delegation here at issue. In fact, the need to quickly administer chemical tests and the goal of avoiding physical confrontation with a recalcitrant arrestee would specifically support delegation where expedient or where, for example, the arrestee demonstrates undue antagonism toward the arresting officer.

Furthermore, appellant, in arguing that delegation is improper, is interpreting the statute very narrowly. ■ "Remedial statutes such as section 13353 'must be liberally construed to effect their objects and suppress the mischief at which they are directed. They should not be given a strained construction that might impair their remedial effect.'" (*Bush* v. *Bright* (1968) 264

---

be the one to administer the test.

In *Covington* v. *Department of Motor Vehicles* (1980) 102 Cal.App.3d 54, at page 59 [162 Cal.Rptr. 150], the court did suggest that a breath test "could only have been [administered by] the officer or officers that viewed the [arrestee] while he was driving." However, that comment is not applicable to the instant case because unlike appellant here, Covington refused to take any tests before the arresting officer transferred custody of him, and the arresting officer thus never directed the other officer to administer the test. Here, by contrast, Sergeant Canning transferred custody of appellant to Officer Sezgen with directions to have the test administered.

Cal.App.2d 788, 792 [71 Cal.Rpr. 123], quoting from 54 Cal.Jur.2d, Statutes, § 182, pp. 681-682.) In the case at bar, delegation was consonant with the statutory purposes.

■ Appellant claims that he does not oppose all delegation of functions. What he does oppose is the delegation of the "ability to flunk the arrestee," thus depriving the arrestee of his or her driving privileges. Such a critical statutory role, appellant argues, should only be performed by the officer having reasonable cause to suspect the arrestee of drunken driving.

We do not find appellant's argument convincing. Appellant does not explain why a nonarresting officer is more likely to unjustly flunk the arrestee, or how the arrestee could be unjustly flunked at all, given that the chemical tests involved are objective ones. Appellant's concern, expressed at oral argument, that an arrestee will be forced to run a gamut of "drunk baiters," each endeavoring to elicit the arrestee's refusal, is unsupported by the facts in this case. Such circumstances, if demonstrated, might bear on the voluntariness of an arrestee's refusal, but a speculative fear of such circumstances occurring does not warrant a general rule of nondelegation which could seriously impede the operation of section 13353 and frustrate its remedial purposes.

We hold that under section 13353 it was proper for Sergeant Canning to transfer custody of appellant to Officer Sezgen for purposes of having a chemical test for intoxication administered, even though Officer Sezgen was not the arresting officer and may not have had reasonable cause to make the arrest.

■ Appellant next contends that his due process rights were violated because he did not get adequate notice concerning DMV's charge against him. He bases his contention on the fact that the officer's statement provided to DMV by Sergeant Canning and Officer Sezgen was incomplete for its failure to mention the fact that he had initially consented to a blood test.

We initially note that the "incomplete" report was not meant for appellant's eyes at all, much less as notice of imminent DMV action. Moreover, the report would not appear to be incomplete in any material way, for appellant's ultimate refusal to be tested, and the adverse consequences flowing therefrom, would not be changed by his earlier consent, unless, of course, he had already submitted to such a test.

Section 13950 provides in part: "Whenever the [DMV] . . . proposes to . . . revoke or suspend the driving privilege of the person [arrested] . . . , notice and an opportunity to be heard shall be given before taking the action." Such notice may be given either by personal delivery or by mail. (§ 22.)

DMV satisfied the notice requirement by mailing the order of suspension to appellant, which fully advised him of the action DMV intended to take and the procedure appellant should follow to have a full evidentiary hearing as to whether good cause existed for the suspension. It is obvious that appellant received and understood the effect of this notice since his attorney filed a timely request for a hearing in response to it. Appellant was given adequate notice and an opportunity to be heard; therefore, his due process rights were not violated.

Appellant's final argument is that there is insufficient evidence to support DMV's finding that he refused to submit to a test. ■ Under the very recent Supreme Court decision in *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392 [188 Cal.Rptr. 891, 657 P.2d 383], a driver's license is a fundamental vested right for the purpose of selecting the standard of judicial review of an administrative decision to suspend or revoke such license, and the trial court must therefore exercise its independent judgment in reviewing the administrative record. (Code Civ. Proc., § 1094.5, subd. (c); *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].)

■ The familiar rule is that, upon review of the trial court's exercise of independent judgment, the appellate court reviews the record to determine whether the trial court's findings are supported by substantial evidence. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143, fn. 10; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71-73 [64 Cal.Rptr. 785, 435 P.2d 553].)

■ Findings of fact were not requested from or expressly issued by the trial court. In such a case, "findings necessary to support the judgment will be implied and if there is any substantial evidence to support the judgment, it must be affirmed." (*Small* v. *Smith* (1971) 16 Cal.App.3d 450, 455 [94 Cal.Rptr. 136]; see also *Hall* v. *Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 496 [135 Cal.Rptr. 725]; *McLaughlin* v. *Board of Medical Examiners* (1973) 35 Cal.App.3d 1010, 1013 [111 Cal.Rptr. 353].)

■ We hold, after having reviewed the record, that there is substantial evidence of appellant's refusal to support the finding of refusal and, hence, imposition of the statutory penalty.

First, appellant did not contradict Officer Sezgen's testimony that he refused to take the test. Appellant merely stated that he neither recalled nor believed he had refused.

Second, although appellant maintains that he could not have effectively refused to take the test because he was in a state of shock or unconsciousness due to his head injury, he did not produce any medical evidence as to when the injury occurred, or how the injury could have affected his ability to effectively

refuse consent. Officer Sezgen testified that he did not know of any injuries suffered by appellant.

The only evidence that appellant relies upon is the fact that the booking sheet, which mentions appellant's scar (which he claims was caused by the injury) lists "2305" as the time of booking, while the officer's statement lists "2315" as the time of refusal. Officer Sezgen explained, however, that the time on the booking sheet may have indicated the time when he filled it out rather than the actual time of booking. Officer Sezgen also testified that the notation as to the scar was not on the booking sheet when he filled it out. The only other evidence regarding appellant's injury is his copy of an emergency admission form from Mary's Help Hospital which indicates the time of admission as 11:40.

■ Where there is conflicting evidence, as in the case at bar, "[t]he presumption being in favor of the judgment, the court must consider the evidence in the light most favorable to the prevailing party, giving him the benefit of every reasonable inference, and resolving conflicts in support of the judgment." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4236; italics deleted.)

■ Resolving the conflict between the testimony of Officer Sezgen and the booking sheet notation in favor of the judgment, we must conclude that substantial evidence supports the absence of injury at the time of refusal. Moreover, as noted above, appellant's assertion that his injury would have affected his ability to effectively refuse consent was wholly unsubstantiated.

The judgment is affirmed.

Rouse, Acting P. J., and Miller, J., concurred.