[No. A020490. First Dist., Div. One. May 11, 1984.]

DAVID WILLIAM CAMPBELL, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Harold W. Teasdale and Edward P. Hill, Deputy Attorneys General, for Defendant and Appellant.

J. Thomas Sherrod for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, Acting P. J.—** On this appeal the *sole issue* posed by the parties is whether Vehicle Code section 13352—calling for a mandatory driver's license suspension by the state's Motor Vehicle Department, where the driver is for the first time convicted of driving under the influence of intoxicating liquor (Veh. Code, § 23102), and the court either orders license suspension or does not grant probation—is a constitutionally proscribed ex post facto law as to such arrests made prior to the statute's effective date, *February 18, 1982.*

Plaintiff Campbell was arrested for such an offense, *August 30, 1981*, and was thereafter convicted of it. Then because of the newly effective statute

and the circumstances of his conviction, the Department of Motor Vehicles temporarily suspended his driver's license. On his petition for mandate the superior court set aside the department's action. This appeal ensued.

■ "The ex post facto clauses (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9) *apply only to penal statutes.* They prohibit retrospective laws that (1) impose criminal liability for conduct innocent when it occurred, (2) increase the punishment prescribed for a crime at the time it was committed, or (3) by necessary operation and ' "in [their] relation to the offense, or [their] consequences, alter the situation of the accused to his disadvantage. . . ." ' " (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 [167 Cal.Rptr. 854, 616 P.2d 836]; italics added.)

■ Here, if Vehicle Code section 13352 may be deemed penal in nature the superior court's judgment must be upheld.

But it has regularly been held that a statute such as Vehicle Code section 13352, calling under certain circumstances for departmental "suspension or revocation of a [driver's] license *is not penal;* its purpose is to make the streets and highways safe by protecting the public from incompetence, lack of care, and wilful disregard of the rights of others by drivers." (*Beamon* v. *Dept. of Motor Vehicles* (1960) 180 Cal.App.2d 200, 210 [4 Cal.Rptr. 396]; italics added.) Federal authority is in accord: "[I]t is well established that such departmental [driver's license] suspensions are regulatory *and not penal."* (*United States* v. *Best* (9th Cir. 1978) 573 F.2d 1095, 1099.) And to the same effect see *Talley* v. *Municipal Court* (1978) 87 Cal.App.3d 109, 113-114 [150 Cal.Rptr. 743]; *Goss* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 268, 270 [70 Cal.Rptr. 447].

The above authority is persuasive, and we honor it. We are therefore obliged to reverse the judgment of the superior court.

The judgment directing the peremptory writ of mandate is reversed.

Holmdahl, J., concurred.

**NEWSOM, J.**—I respectfully dissent.

I acknowledge that appellate decisions in this state, save perhaps one (*People* v. *O'Rourke* (1932) 124 Cal.App. 752, 759 [13 P.2d 989]),[1] have

---

[1] In *O'Rourke,* the court held that revocation or suspension of a driver's license does not constitute an "additional penalty to the judgment of conviction," but rather is "part and parcel thereof, . . ." (*Id.,* at p. 759.)

historically characterized statutes prescribing driver's license suspension as regulatory rather than penal. (See *Talley* v. *Municipal Court* (1978) 87 Cal.App.3d 109, 113-114 [150 Cal.Rptr. 743]; *Goss* v. *Dept. of Motor Vehicles* (1968) 264 Cal.App.2d 268, 270 [70 Cal.Rptr. 447]; *Beamon* v. *Dept. of Motor Vehicles* (1960) 180 Cal.App.2d 200, 210 [4 Cal.Rptr. 396].) Of these cases, however, none has denied the penal nature of such statutes in the context of determining whether a violation of ex post facto clauses occurred.[2] Moreover, none of these cases in my opinion goes beyond mere lip service and engages in an analysis of the issue. In the cases cited by the majority, license suspension was viewed as—*ipse dixit*—merely regulatory. I am convinced that even a brief analysis compels a contrary conclusion.

It is of course well-established that ex post facto clauses (U.S. Const., art. I, § 9, cl. 3; Cal. Const., art. I, § 9) apply only to penal statutes. (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 [167 Cal.Rptr. 854, 616 P.2d 836]; *In re Valenzuela* (1969) 275 Cal.App.2d 483, 486 [79 Cal.Rptr. 760].) An ex post facto effect occurs when a statute imposes criminal liability for conduct innocent when it was done, inflicts more severe punishment than that attending the act at the time it was committed, aggravates a crime by making it more serious than when committed, or alters the rules of evidence to the disadvantage of the accused. (*Conservatorship of Hofferber, supra,* 28 Cal.3d at p. 180; *People* v. *Superior Court (John D.)* (1979) 95 Cal.App.3d 380, 393 [157 Cal.Rptr. 157].)

Laws cannot be classified as "penal" or "regulatory" based upon labels. The United States Supreme Court in *Trop* v. *Dulles* (1958) 356 U.S. 86, 94 [2 L.Ed.2d 630, 638-639, 78 S.Ct. 590], dealing with a statute imposing denationalization as punishment for desertion declared it penal despite its regulatory label. Noting that substance rather than form is controlling (*id.,* at p. 95 [2 L.Ed.2d at p. 639]), the court stated: "In deciding whether or not a law is penal, this Court has generally based its determination upon the purpose of the statute." (*Id.,* at p. 96 [2 L.Ed.2d at p. 639].) The court also considered "the severity of the disability imposed as well as all the circumstances surrounding the legislative enactment" as relevant to this decision. (*Id.,* at p. 96, fn. 18 [2 L.Ed.2d at pp. 639-640].) The court explained: "If the statute imposes a disability for purposes of punishment— that is, to reprimand the wrongdoer, to deter others, etc.—it has been considered penal. But a statute has been considered nonpenal if it imposes a

---

[2]Laws which have the effect of suspending or revoking professional licenses have been classified as nonpenal and thus not subject to the ex post facto prohibition. (See *Furnish* v. *Board of Medical Examiners* (1957) 149 Cal.App.2d 326, 330-331 [308 P.2d 924] [physician's license]; *Murrill* v. *State Board of Accountancy* (1950) 97 Cal.App.2d 709, 711-712 [218 P.2d 569] [public accountancy license].)

disability, not to punish, but to accomplish some other legitimate governmental purpose." (*Id.*, at p. 96 [2 L.Ed.2d at pp. 639-640].)

Thus, our task is to determine whether the disability imposed by section 13352 was for the purpose of punishment or merely incidental to some other legitimate governmental purpose. (*United States* v. *Ward* (1980) 448 U.S. 242, 248-249 [65 L.Ed.2d 742, 749, 100 S.Ct. 2636]; *Bell* v. *Wolfish* (1979) 441 U.S. 520, 538 [60 L.Ed.2d 447, 467-468, 99 S.Ct. 1861]; *Flemming* v. *Nestor* (1960) 363 U.S. 603, 614 [4 L.Ed.2d 1435, 1446, 80 S.Ct. 1367].)

The amendment to section 13352 at issue here was enacted as part of comprehensive legislation—Assembly Bill No. 542 of 1982—which revised our driving under the influence laws. The legislation generally clarified the law, assisted the prosecution of "driving under the influence" cases and increased the sanctions for such violations. (See Stats. 1982, ch. 53.) The manifest intent of the extensive legislative regulation was to address the continuing threat to public safety posed by those who drink and drive. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 263-264 [198 Cal.Rptr. 145, 673 P.2d 732].) As part of a legislative scheme to better deter the drinking driver, section 13352, subdivision (a), increases the punishment for a first time conviction of driving under the influence of intoxicating liquor (Veh. Code, § 23102). This is a criminal rather than a regulatory purpose.

The harsh penalty of driver's license suspension may of course under certain circumstances be justified by the severity of the offense. But it is not to be taken lightly. Our high court recently recognized the profound "personal and economic hardship" which accompanies suspension of the privilege, and found that the "right to drive" is "fundamental" for purposes of selecting the standard of administrative review. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 397-398 [188 Cal.Rptr. 891, 657 P.2d 383]; see also *Lee* v. *Department of Motor Vehicles* (1983) 142 Cal.App.3d 275, 284 [191 Cal.Rptr. 23].) While declining to characterize the right to drive as fundamental for due process or equal protection purposes (*Berlinghieri, supra,* 33 Cal.3d at p. 397), the court nevertheless emphasized the substantial hardship which the suspension or revocation of a driver's license represents. (*Id.*, at pp. 397-398; see also *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586].)

In my view, both the intent of the law and the severity of its impact indicate that it was designed to punish rather than regulate. The substance of the law reaffirms my conclusion. Section 13352, subdivision (a)(1), does not vest in the Department of Motor Vehicles the discretion to suspend a license. Instead, it directs the department to suspend or revoke a driver's

license for a violation of section 23152 "if the *court* orders the department to suspend the privilege or if the *court* does not grant probation." (Italics added.) The Legislature thus left with the court the authority to order suspension or revocation of a driver's license as part of the criminal penalty scheme; it did not empower the department to impose such sanctions as part of its regulatory duties.

Recently, in *Johnson* v. *Alexis* (1983) 143 Cal.App.3d 82 [191 Cal.Rptr. 529], the court held that the 1981 amendments to section 13352, which required a one-year suspension of driving privileges for a second conviction of drunk driving within five years of the date of a prior offense which resulted in a conviction, could not be retroactively applied (*id.*, at pp. 85-86), citing *Curtin* v. *Department of Motor Vehicles* (1981) 123 Cal.App.3d 481 [176 Cal.Rptr. 690], for the proposition that "the act of suspending one's driver's license constitutes punishment . . . ." (*Id.*, at p. 85.)

I concur with the reasoning of the court in *Johnson,* and conclude that since the statute at issue here is penal in nature, its retroactive application violates the constitutional proscription against ex post facto laws.