[No. C006044. Third Dist. July 27, 1990.]

KENNETH G. JOHNSON, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, Vincent J. Scully, Richard Frank and Cathy A. Neff, Deputy Attorneys General, for Defendant and Appellant.

Brislain, Zink, Lenzi & Artz and Albert J. Lenzi, Jr., for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—The question in this appeal is whether the statute mandating a one-year suspension of the driver's license of one convicted of

vehicular manslaughter applies when, by force of circumstances, the suspension would run consecutive to a one-year revocation based on discretionary, administrative review of the same conduct that underlies the manslaughter conviction. The answer is yes.

The Department of Motor Vehicles (DMV) appeals from a judgment issuing a writ of mandate on the petition of Kenneth Johnson (plaintiff). The writ directs DMV both to lift the suspension of plaintiff's driver's license and immediately to issue plaintiff a driver's license. We shall reverse.

On April 15, 1987, a car driven by plaintiff struck and killed a pedestrian. At the scene of the accident, plaintiff admitted to the investigating officer that he had been drinking. Plaintiff was arrested and charged with vehicular manslaughter (Pen. Code, § 192, subd. (c)(3)) and driving under the influence of alcohol and causing bodily injury to another (Veh. Code, § 23153, subd. (a); all statutory references to sections of an undesignated code are to the Vehicle Code).

On receipt of information that a licensee has been involved as a driver in any accident causing death or bodily injury, DMV "may conduct an investigation to determine whether the privilege of [that] person to operate a motor vehicle should be suspended or revoked . . . ." (§ 13800.) In addition to the investigation, DMV "may require the re-examination" of the licensee's qualifications to drive. (§ 13801.)

Informed of plaintiff's involvement in a fatal accident, DMV ordered plaintiff to appear for reexamination. At the conclusion of the reexamination, DMV found plaintiff was a negligent operator of a motor vehicle who caused or contributed to the cause of a fatal accident. DMV revoked plaintiff's driving privilege in the interest of safety. The revocation, pursuant to section 13953, was effective July 11, 1987.[1] In compliance with the order of revocation, plaintiff surrendered his driver's license but requested a hearing before DMV to contest the revocation. (See §§ 13950-13953.) Plaintiff later withdrew his request and no hearing was held.

Where, as here, no period of revocation is prescribed, the divested licensee may, after one year, submit to reexamination to reestablish his driving privilege. (§ 12807, subd. (b).) In September 1988, 14 months after the

---

[1] Section 13953 states in relevant part: "[I]n the event the department determines upon investigation or reexamination that the safety of the person subject to investigation or reexamination or other persons upon the highways require such action, the department shall forthwith and without hearing suspend or revoke the privilege of the person to operate a motor vehicle or impose reasonable terms and conditions of probation which shall be relative to the safe operation of a motor vehicle. . . ."

revocation of his license, plaintiff successfully submitted to reexamination, and DMV terminated the revocation.

Despite the termination, DMV refused to issue plaintiff a driver's license. The refusal was based on the fact that on June 24, 1988, plaintiff had been convicted of vehicular manslaughter as a result of the April 1987 accident. (Pen. Code, § 192, subd. (c)(3).) Section 13352 provides in relevant part: "(a) The department shall immediately suspend or revoke . . . the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section . . . 23153 . . . . For purposes of this section, suspension or revocation shall be as follows: . . . . [¶] (2) Upon a conviction or finding of a violation of Section 23153 punishable under Section 23180 [as a first violation of section 23153], the privilege shall be suspended for a period of one year." A conviction of violation of Penal Code section 192, subdivision (c)(3) is deemed a violation of section 23153 for purposes of the license suspension provisions of section 13352, subdivision (a)(2). (§ 13350.5)[2]

Although the revocation of his license had been terminated, DMV informed plaintiff his driving privilege could not be restored until the expiration of the one-year suspension, which was effective June 24, 1988, the date of plaintiff's conviction for vehicular manslaughter.

Plaintiff petitioned the superior court for a writ of mandamus directing DMV to vacate its order of suspension. (§ 14400.) Plaintiff's theory was that the law requires only a single one-year suspension for driving under the influence and causing bodily injury to another (§ 23153), and because plaintiff had already incurred a preconviction revocation of his driving privilege for at least one year under the DMV order of July 11, 1987, there was no legal basis to suspend his license for another year pursuant to section 13352, subdivision (a)(2). The trial court agreed with plaintiff, ruling the provisions of section 13352, subdivision (a)(2) are mandatory only if the privilege to drive has not previously been suspended or revoked for the same conduct under other provisions of law. The trial court granted the writ, directing DMV immediately to lift the suspension of plaintiff's driving privilege and to issue plaintiff a driver's license.

The trial court erred. There is nothing in the statute to suggest the provisions of section 13352 requiring mandatory suspension on conviction

---

[2] Penal Code section 192, subdivision (c)(3) provides: "Manslaughter is the unlawful killing of a human being without malice. It is of three kinds: [¶] (c) Vehicular—[¶] (3) Driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of an unlawful act, not amounting to a felony, but without gross negligence; or driving a vehicle in violation of Section 23152 or 23153 of the Vehicle Code and in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence. . . ."

of certain offenses are mitigated, modified, amended, suspended or otherwise affected by those provisions authorizing discretionary administrative review of the driving privilege (§§ 13800, 13801, 13953), so that action under the latter precludes action under the former. Indeed, the provisions for mandatory suspension and discretionary review serve entirely different purposes.

First, the suspension imposed by section 13352, subdivision (a)(2) is punitive. (See *Campbell* v. *Department of Motor Vehicles* (1984) 155 Cal.App.3d 716, 720 [202 Cal.Rptr. 324] (dis. opn. of Newsom, J.).) Moreover, the section admits of no discretion, requiring the immediate and automatic suspension for one year of the driving privilege of anyone convicted of vehicular manslaughter. By contrast, the provisions authorizing administrative review are discretionary and any action taken against the licensee thereunder is not penal in nature. The purpose underlying these provisions is to make the streets and highways safe by protecting the public from drivers who have demonstrated incompetence, lack of care, or willful disregard of the rights of others. (See *Beamon* v. *Dept. of Motor Vehicles* (1960) 180 Cal.App.2d 200, 210 [4 Cal.Rptr. 396].)

Second, the sanction required by section 13352, subdivision (a)(2) is only temporary. A suspension "means that the person's privilege to drive a motor vehicle upon a highway is temporarily withdrawn." (§ 13102.) Thus, at the end of the period of suspension, the privilege is restored, subject only to the licensee providing proof of financial responsibility. (See §§ 13352, subd. (a)(2), 16430.) Revocation of the driving privilege, however, involves more than temporary withdrawal of the privilege. " '[R]evocation' means that the person's privilege to drive a motor vehicle is *terminated* . . . ." (Italics added; § 13101.) Moreover, where no period of revocation is specified, the revocation is indefinite. Although the divested licensee may after one year seek to have a new license issued (§ 12807, subd. (b)), there is no guaranty the privilege will be restored. The burden is on the divested licensee to submit to reexamination and reestablish his qualifications for relicensure to the satisfaction of DMV.[3]

Finally, discretionary administrative review can be triggered by a number of considerations that do not implicate the mandatory provisions of section 13352. The latter are automatically activated on conviction of certain specified crimes most of which have as an element an act committed under the influence of an intoxicant. On the other hand, DMV "may conduct an investigation" (§ 13800) and "may require the re-examination" of the

---

[3] In his petition for extraordinary relief, plaintiff incorrectly referred to DMV's July 1987 order as a *suspension* of his driving privilege. The record shows clearly DMV *revoked* plaintiff's driving privilege at that time.

licensee's qualifications to drive (§ 13801) whenever it receives information a licensee has been involved in an accident causing serious injury or property damage, or in three or more accidents within a period of twelve consecutive months, or is a reckless, negligent or incompetent driver (§ 13800).

Moreover, during such investigation and reexamination there is more at issue than the fact triggering the review. The licensee's prior traffic record, including prior license suspension, revocation or restriction, convictions of traffic violations, mental and physical condition, knowledge of and compliance with the vehicle laws and ability to exercise ordinary and reasonable care in operating a motor vehicle are all subject to examination and review. (§§ 12805-12807; *Beamon* v. *Dept. of Motor Vehicles, supra*, 180 Cal.App.2d at p. 210.) Since the provisions authorizing discretionary administrative review do not entail punitive sanctions against the licensee but are designed to remove unsafe drivers from the highways, it would be anomolous to hold that a licensee subject to mandatory suspension for conviction of vehicular manslaughter is thereby insulated from an administrative review of his qualifications to retain the privilege to operate a motor vehicle.

Plaintiff's argument that the law provides for only a single one-year suspension upon conviction for vehicular manslaughter is, strictly speaking, correct but beside the point. If the order of the two actions taken here with respect to plaintiff's license were reversed, as in the case where plaintiff's conviction (and consequent license suspension) had followed closely after the accident, the logic of plaintiff's argument would preclude DMV from investigating and reexamining plaintiff's qualifications to drive because the mandatory one-year suspension had already been imposed. As we have noted, however, a suspension is simply a temporary withdrawal of the privilege to drive. It does not necessarily serve the purposes and objectives of the statute authorizing DMV to investigate and reexamine plaintiff's overall qualifications to drive, leading perhaps to revocation of plaintiff's driving privilege for an indefinite period, perhaps forever, in the interests of protecting the public safety.

The instant facts provide a paradigm of the illogicality of plaintiff's argument. As plaintiff would have it, a licensee who causes a fatal traffic accident as a result of driving under the influence of alcohol would suffer no more than a temporary one-year withdrawal of the driving privilege. On the other hand, a licensee involved in substantially less culpable conduct, e.g., three minor, noninjury traffic accidents within a period of twelve months, in none of which alcohol is involved, could find his license revoked for an indefinite period. (§ 13800, subd. (b).) Moreover, the burden in the latter case is on the licensee at some future time to reestablish his driving

qualifications to the satisfaction of DMV with the distinct possibility that he may never again be restored to the privilege to drive. The statutory language does not reasonably lend itself to the interpretation for which plaintiff argues, and we are confident the Legislature never intended the bizarre results which that interpretation would produce.

The judgment is reversed. The cause is remanded with directions to the trial court to enter judgment denying the petition for writ of mandate. DMV shall recover its costs on appeal.

Sims, J., and Davis, J., concurred.